No. 18,686.

J. D. MALONE, *Appellee,* v. HENRY D. JONES et al., *Appellants.*

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Serving Tainted Meat—Damages—Former Opinion Adhered To.* The views expressed in the former opinion in this case (*Malone v. Jones,* 91 Kan. 815, 139 Pac. 387) are adhered to, but the language of the second paragraph of the syllabus is modified by withdrawing the statement that the father did not know that the meat was tainted until it was on the table. There was competent evidence to support a finding that he had such knowledge.

Appeal from Smith district court; RICHARD M. PICKLER, judge. Opinion on rehearing filed July 7, 1914. Reaffirmed. (For original opinion see 91 Kan. 815, 139 Pac. 387.)

Malone v. Jones.

*W. E. Mahin,* of Osborne, *F. W. Mahin,* and *I. M. Mahin,* both of Smith Center, for the appellants.

*E. S. Rice, W. S. Rice,* and *A. W. Relihan,* both of Smith Center, for the appellee.

The opinion of the court was delivered by

BENSON, J.: Upon rehearing, the opinion in this case reported in 91 Kan. 815, 139 Pac. 387, is criticised in an able and elaborate argument·in behalf of the defendants. It is asserted that they owed no duty to the plaintiff except the duty not to wantonly or willfully injure him. The district court instructed the jury that the defendants, employing the plaintiff, might be held for damages caused by their negligence ·in furnishing unwholesome food; that is, for failure to exercise ordinary and reasonable care. The divergence between the instruction and the views of the ʹdefendants' counsel are thus clearly presented.

Many authorities are cited holding that manufacturers of articles not inherently dangerous are not liable to a customer of the vendee of the manufacturer for a defect in the quality of the articles. Among the cases cited in support of this principle is *Railway Co. v. Merrill,* 65 Kan. 436, 70 Pac. 358. Others are cited in the opinion in that case. It will be found, however, that the general doctrine is subject to limitations which must be carefully noticed in its application to various situations. This is made quite apparent by an illuminating review of the cases in 19 L. R. A., n. s., 923, where *Tomlinson v. Armour & Co.,* 75 N. J. Law, 748, 70 Atl. 314, cited in the former opinion, is reported. One of the limitations referred to is pointed out in *Mastin v. Levagood,* 47 Kan. 36, 27 Pac. 122, 27 Am. St. Rep. 277, referred to in the opinion in the Merrill case:

"There is this marked distinction between an act of negligence imminently dangerous and one that is not so; the guilty party being liable in the former case to the party injured, whether there was any relation of contract between them or not, but not so in the latter case" (p. 42.)

In the note above referred to it is said:

"In the following cases, which also assent to the general rule that a manufacturer or vendor was not liable to those not in privity of contract with him, for injuries resulting from his negligence, unless the article was dangerous in itself, it will be noticed that the rule was further limited to cases where he was ignorant of the defective condition of the article sold." (Note, 19 L. R. A., n. s., 926.)

This is followed by a reference to adjudicated cases, among them *Holmvik v. Parsons Band Cutter & Self-feeder Co.*, 98 Minn. 424, 108 N. W. 810, where a recovery was sustained for the death of an employee of the owner of a separator, caused by a defect in a covering upon which the deceased was walking. The action appears to have been based upon the negligence of the manufacturer in using a board on the covering so obviously defective as to be in reason known to the manufacturer. Another case decided by the same court is referred to, where it was held that the manufacturer of a defective stepladder was liable to one using it for damages resulting from concealed defects, on the ground that a manufacturer of an article, although not ordinarily dangerous, which was so negligently made as to be obviously unsafe is liable to one into whose hands it comes in the usual course of business. (*Schubert v. J. R. Clark Co.*, 49 Minn. 331, 51 N. W. 1103.) Another case referred to in the same classification declaring the same principle is *Pierce v. C. H. Bidwell Thresher Co.*, 153 Mich. 323, 116 N. W. 1104. Several others are also referred to.

In *Huset v. J. I. Case Threshing Mach. Co.*, 57 C. C. A. 237, 61 L. R. A. 303, in an opinion delivered by Judge Sanborn, it was decided that there were three exceptions to the general rule that a manufacturer is not liable to third parties with whom he has no contractual relations for negligence in the manufacture or sale of the articles he handles: (1) Where his negligence is imminently dangerous to the life or health of mankind,

which occurs in the preparation or sale of an article intended to preserve, destroy, or affect human life; (2) where he has invited the use of the defective article; or (3) where he sells or delivers an article which he knows to be imminently dangerous to life or limb without giving notice of its qualities, in which case he is liable to one who suffers an injury therefrom which might reasonably have been anticipated.

While the foregoing decisions, and others declaring the same principles, are useful by analogy, they are not necessarily decisive of the questions here presented, and cases relating to food will now be referred to. It was held in *Skinn v. Reuter*, 135 Mich. 57, 97 N. W. 152, 106 Am. St. Rep. 384, that where the owner of hogs, knowing them to be diseased, sold them to a dealer who in ignorance of their condition sold them to a third person, who placed them with other hogs, the original vendor was liable for the resulting damages. It was said:

"It has been held that the wrongdoer is responsible for all consequences naturally resulting from his wrong, whether he could have anticipated those consequences or not. (1 Sutherland on Damages, § 16; Wharton on Negligence, § 77; *Stevens v. Dudley,* 56 Vt. 158.) On the other hand, it is held that his responsibility is limited to such consequences as a person of average intelligence and knowledge should have anticipated. (Pollock on Torts, p. 28.) As the application in this case of either rule leads to the same result, it is unnecessary to determine which is correct." (p. 60.)

In another case, where the plaintiff sought to recover damages for injuries sustained in eating an unwholesome food product, it was held that a packer who had sold the product to a dealer was liable to a consumer who purchased it from the dealer. In the opinion it was said:

"The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales. The obligation of the manufacturer should not be based alone upon privity of contract. It should rest, as was

once said, upon 'the demands of social justice.' The producer should be held responsible for the results of negligent acts which he can readily foresee. . . . But the meat packer who fails to inspect his products for poisonous parasites or ingredients knows that poison will poison and that the persons to be poisoned through his neglect will be those who eat his products and no one else. The natural, probable and almost inevitable result of his negligence will be injury to the consumer, and, in my opinion, every consideration of law and public policy requires that the consumer should have a remedy. If there are no authorities which grant one it is high time for such an authority." (*Ketterer v. Armour & Co.*, 200 Fed. 322, 323.)

In a note in 100 Am. St. Rep. 198 the author states that the furnishing of food which endangers human life or health stands on much the same ground as the administering of improper drugs or medicines, from which a liability springs irrespective of any question of privity of contract between the parties. Among other citations the case of *Craft v. Parker, Webb & Co.*, 96 Mich. 245, 55 N. W. 812, 21 L. R. A. 139, is cited. In that case it was held that a dealer who sells meat for consumption which is dangerous to those eating it is answerable for consequences to others than the purchaser, for the dealer knew, or should have known, its condition and its intended use.

It will be noticed in the case last cited that responsibility is declared where the original vendor should have known the defective condition, as well as in cases of actual knowledge. This view is also taken in *Berger v. Standard Oil Co.*, 126 Ky. 155, 103 S. W. 245, 11 L. R. A., n. s., 238, where it was held that an employee might recover for an injury caused by the explosion of oil sold to his employer by the defendant, who knew, or in the exercise of ordinary care could have known, of the dangerous character of the oil.

In *Bishop v. Weber*, 139 Mass. 411, 1 N. E. 154, it was held that a caterer who furnished unwholesome food, partaken of by a guest, was liable for the injurious consequences. It was said in the opinion that

one employed to furnish food for an entertainment for all who may attend stands in such a relation toward the guests as to be liable to an action for negligence in furnishing unwholesome food. The court said:

"This liability does not rest so much upon an implied contract, as upon a violated or neglected duty voluntarily assumed. Indeed, where the guests are entertained without pay, it would be hard to establish an implied contract with each individual. The duty, however, arises from the relation of the caterer to the guests. The latter have a right to assume that he will furnish for their consumption provisions which are not unwholesome and injurious through any neglect on his part. The furnishing of provisions which endanger human life or health stands clearly upon the same ground as the administering of improper medicines, from which a liability springs irrespective of any question of privity of contract between the parties." (p. 417.)

The rule that the keeper of a public restaurant is liable for damages to a person who partakes of unfit food served through his negligence is held in *Sheffer v. Willoughby,* 163 Ill. 518, 45 N. E. 253, 34 L. R. A. 464. In that case the plaintiff failed to recover only because of the insufficiency of the proof of negligence. It was said in the opinion:

"If a person keeping a public restaurant fails to exercise ordinary care in furnishing food to his patrons, and damages result, he would be liable if his business be conducted in a careless or negligent manner, and through such negligence a patron is injured." (p. 522.)

(See, also, Note, 40 L. R. A., n. s., 480.)

In *Bark v. Dixson,* 115 Minn. 172, 131 N. W. 1078, a recovery was sustained against the proprietor of a hotel for injuries suffered by a chambermaid in eating tainted meat. Her board was furnished as a part of her compensation. An instruction that the burden of proof was on the defendants to prove that they used ordinary care in the selection and preparation of the

food was held to be fully as favorable to the defendants as they were entitled to. The court said:

"It does not seem important whether the action was based on negligence or on contract and breach of an implied warranty. The evidence is sufficient to justify the verdict on either theory." (p. 173.)

Many of the principles discussed in the cases above referred to are stated in *Tomlinson v. Armour & Co.*, 75 N. J. Law, 748, 70 Atl. 314, 19 L. R. A., n. s., 923, cited in the former opinion, wherein it was also said:

"Among the most fundamental of personal rights, without which man could not live in a state of society, is the right of personal security, including 'the preservation of a man's health from such practices as may prejudice or annoy it' (1 Bl. Com. 129, 134), a right recognized, needless to say, in almost the first words of our written Constitution (Const. art. 1, ¶ 1). To assert, therefore, that one living in a state of society, organized, as ours is, according to the principles of the common law need not be careful that his acts do not endanger the life or impair the health of his neighbor seems to offend against the fundamentals." (p. 757.)

In reason and justice these principles apply to a person who for pay furnishes board at his table for laborers, whether employed by him or another, as well as to manufacturers of food products or the keepers of hotels or restaurants. It may be that greater care is required of the latter because they may be presumed to have superior knowledge. But in either case the exercise of ordinary care, that is, the care of persons of reasonable prudence, in like occupations should be required. It is true that the ordinary housewife who furnishes food for employees may not have the skill or experience in detecting unwholesome or tainted food that one in the occupations mentioned may be presumed to have, still she is required to exercise the ordinary care of reasonably prudent persons in the same occupation, in like circumstances.

"What is due care and caution in given circumstances has to be worked out under the head of negligence. Here we may say that, generally speaking, the standard of duty is fixed by reference to what we should expect in the like case from a man of ordinary sense, knowledge, and prudence." (Pollock on Torts, 8th ed., ¶ 28.)

In this case there was evidence tending to prove that Mrs. Jones' attention was called to maggots in the beef when it was brought up from the cellar; that she removed the maggots and cut away a part of the meat. Mrs. Jones in her testimony stated that she saw fly-blows on the bone which she cut off, "quite a large piece." Her husband was with her when she examined the meat. She testified:

"I heard blow flies in the cellar and I told Mr. Jones to take the meat out and see if there was any flies blows on it. . . . The first thing we did with this meat after we brought it up out of the cellar was to take it out on the porch and look at it, Mr. Jones and I. At that time we saw fly blows on the bone. We cut off a piece of the meat and looked at it. The meat had hung in the cellar from Monday until Friday."

It is true that Mrs. Jones also testified that she saw no maggots in the meat, believed that it was wholesome, and that she would not have cooked it had she known that it was tainted, but the finding upon all the evidence that she, as well as her husband, was negligent in cooking it can not be set aside here, supported as it is by competent evidence.

The statement in the second paragraph of the syllabus of the former opinion that the father did not know of the tainted condition of the meat until it was on the table should be withdrawn. There was evidence from which the jury might find such knowledge.

We are indebted to counsel for both parties for the careful research shown by their briefs upon this very interesting and important question.

For the reasons stated in the former opinion, supported, as we find them to be, by principle and authority, the views there expressed are adhered to, and the judgment is therefore affirmed.