No. 19,009.

ELIZABETH PARKS et al., *Appellees*, v. THE C. C. YOST PIE COMPANY et al., *Appellants*.

### SYLLABUS BY THE COURT.

1. POISONED FOOD — *Injury to Consumer — Liability of Manufacturer and Retail Dealer*. A dealer who sells human food for immediate consumption does so under an implied representation and guaranty that it is wholesome for the purpose for which it is sold.

2. SAME—A manufacturer who prepares food for human consumption and places it in the hands of a dealer for sale is responsible in damages to the widow of a consumer who procures such food from the dealer and loses his life by partaking of such food.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed November 14, 1914. Affirmed.

*E. S. McAnany, Maurice L. Alden, Nathan Cree,* all of Kansas City, and *E. S. Herider,* of Kansas City, Mo., for the appellants.

*George W. Littick, E. C. Little,* and *L. C. True,* all of Kansas City, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This action was brought by Elizabeth Parks, widow of Robert P. Parks, and Melissa Conn, daughter of Elizabeth Parks and Robert P. Parks, who also appears as next friend to Ada Belle Parks, a minor sister about twelve years of age. The action was brought to recover damages for the death of Robert P. Parks, the husband and father of the plaintiffs. It is alleged that Parks came to his death from ptomaine poisoning resulting from eating a pie, or a portion thereof, which was manufactured by the defendant pie company and sold by it to Joseph Alfes, a retail grocery

merchant, who in turn sold and delivered it to the deceased as suitable food for himself and family; that the deceased .ate a portion thereof and was thereby poisoned and made sick, and that his death resulted therefrom within twenty-four hours after partaking of such pie; that the pie contained deleterious ingredients in its manufacture or had been infected with poison which made it unwholesome and dangerous to human health and life, and that the defendants aided and abetted each other in placing the pie upon the market and selling it for use as human food; that the defendants were guilty of negligence in the manufacture and in the methods of handling the pie, and that such negligence was gross and wanton in endangering the health and life of Robert P. Parks and directly causing his death; that prior to such injury Robert P. Parks was a strong, healthy man about fifty-four years of age, and was industrious and prosperous, so that he at all times provided the plaintiffs, who were dependent upon him, with all the necessaries and many of the luxuries of life.

It is also alleged that Robert P. Parks died intestate, leaving as his sole heirs the plaintiffs and one other minor child who has since died single and without issue; that the plaintiffs were dependent upon the deceased for their support, and no administrator had been appointed for the estate of Robert P. Parks. Plaintiffs claimed actual damages in the sum of $5000 and exemplary damages for the same amount, and judgment for $10,000 was prayed for.

The defendant pie company in answer admitted its incorporation and denied all the other allegations of the petition. The defendant Alfes also admitted the incorporation of the pie company and made general denial of all the other allegations of the petition.

There is considerable conflict in the evidence as to the selling of the pie by Alfes, but there is sufficient evidence, if believed by the jury, to justify their finding

that the defendant corporation manufactured the pie in question, sold and delivered it to the defendant Alfes to be sold in his usual course of business for human food, and there is sufficient evidence to justify the finding that Alfes sold the pie through a son of the deceased to the deceased for the purpose of human food.

It appears from the counter-abstract that one of the attorneys for the defendants, in his opening statement to the jury, said:

"Joe Alfes during all this time purchased pies and kept them for sale, that were supplied by the Rushton Baking Company . . . and likewise also had the pies of the Yost Pie Company, but those pies were kept —the pie wagon came every day, and at the end,—or on that day, the man who had charge of the route went into Mr. Alfes' store in his show case,—looked over the pies that were there to ascertain how many he needed, inspected the pies carefully to ascertain whether or not any of the pies were old. If they were old, and in warm weather they became old quicker than in cold weather, as you all know, he would take out those pies, and put in fresh ones; and the pies that were taken out were taken to the plant in Missouri and thrown away.

"Where they were used afterwards, has reference— sometimes some of the employees, it will be shown, took them to feed to their chickens or their pigs, and they were never used after they once came back into the possession of a driver as a stale pie."

That this statement was made does not seem to be controverted and by the usual rule should be taken as an admission of facts so far as it goes.

During the trial the action was, by agreement, dismissed on behalf of Melissa Conn and Ada Belle Parks, and proceeded in the name of Elizabeth Parks, as the widow of Robert P. Parks, no personal representative of the estate of Robert P. Parks having been appointed. The widow is expressly authorized to maintain such an action, where no personal representative has been appointed, by section 420 of the civil code.

Several instructions were requested by defendants

which were all refused, but the substance of many of them was incorporated in the instructions given by the court.

The degree of care required of a manufacturer or dealer in human food for immediate consumption is much greater by reason of the fearful consequences which may result from what would be slight negligence in manufacturing or selling food for animals. In the latter a higher degree of care should be required than in manufacturing or selling ordinary articles of commerce. A manufacturer or dealer who puts human food upon the market for sale or for immediate consumption does so upon an implied representation that it is wholesome for human consumption. Practically, he must know it is fit or take the consequences if it proves destructive. (*Tomlinson v. Armour & Co.*, 75 N. J. Law 748, 70 Atl. 314, 19 L. R. A., n. s., 923.)

The usual rule by which the existence or absence of negligence is to be determined in a particular case is whether the care exercised was commensurate with the danger reasonably to be apprehended, or, as the trial court phrased it, "Ordinary care in a given case is to be determined by the circumstances and facts of that particular case and is [must be] commensurate with the danger and the possible and probable results of a lack of such care and prudence." (See *Malone v. Jones*, 91 Kan. 815, 139 Pac. 387, 92 Kan. 708, 142 Pac. 274.)

It is strenuously urged that the court erred in its sixth instruction, in which the jury were told, in substance, that if the plaintiff was entitled to recover, she was entitled to such sum as would be pecuniary compensation for the loss she and her two daughters had sustained—not considering the suffering of the deceased nor the wounded feelings of the survivors. It is contended that the married daughter had suffered no pecuniary loss.

The verdict and judgment were for $3000. No special questions were requested or submitted, the answers

22—93 KAN.

to which might have determined the items which made up the aggregate amount of the verdict, and the amount does not necessarily suggest that any sum was allowed as damages to or on account of the married daughter.

We find no substantial error in the trial and the judgment is affirmed.