Nos. 38,951 and 38,959

JUDY ANN NICHOLS, a Minor, by FRANKIE NICHOLS, Her Next Friend, Natural Guardian and Mother, *Appellee*, v. ED E. NOLD, an Individual, doing business as Pepsi-Cola Bottling Company; DAVE ELSEY, an Individual, doing business as Mission-Orange Bottling Company, and PHIL D. WHITEMAN, an Individual, doing business as Phil's Market, *Appellants.*

(258 P. 2d 317)

Opinion filed June 6, 1953.

*C. E. Vance,* of Garden City, argued the cause, and *A. M. Fleming, Bert J. Vance,* and *C. R. Hope, Jr.,* all of Garden City, were with him on the briefs for the appellant, Ed E. Nold.

*Geo. R. Gould,* of Dodge City, argued the cause, and *George R. Gould, Jr.,* of Dodge City, was with him on the briefs for the appellant, Dave Elsey.

*James W. Wallace,* of Scott City, argued the cause, and *D. B. Lang,* of Scott City, was with him on the briefs for the appellant, Phil D. Whiteman.

*Payne H. Ratner,* of Wichita, argued the cause, and *Ora D. McClellan, Louise Mattox, Payne H. Ratner, Jr., Gerald L. Michaud, Russell Cranmer, Dale B. Stinson, Jr.,* and *Starr Calvert, Jr.,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for personal injuries alleged to have resulted from the negligence of defendants. The defendants have appealed from orders of the court overruling their respective demurrers to plaintiff's third amended petition.

The petition in question may be summarized as follows: The plaintiff and her mother, as next friend, reside in Scott City. The defendant, Ed E. Nold, resides in Dodge City, and under the name

of the Pepsi-Cola Bottling Company is in the business of manufacturing and selling various kinds of bottled beverages, including "Pepsi-Cola," which is manufactured and bottled by him at his plant in Dodge City. The bottles containing said beverages are charged with carbon dioxide or carbonic acid gas. The Pepsi-Cola is commonly known and referred to as a soft drink and is advertised and held forth to the public by defendant under the trade-mark "Pepsi-Cola" as a refreshing, sparkling and enjoyable beverage, which is sold and delivered by said defendants either individually or through distributing agents to various cafes, restaurants, lunch stands, grocery stores and private homes throughout the cities of Dodge City, Garden City, Scott City and the surrounding towns and territory; that the defendant, Dave Elsey, doing business as the Mission-Orange Bottling Company of Garden City, handles, transports and distributes quantities of Pepsi-Cola products in the above mentioned territory and has acquired from the defendant Nold quantities of bottles of Pepsi-Cola for distribution throughout the territory mentioned and has and does handle, transport and distribute the same to the defendant, Phil D. Whiteman, doing business as Phil's Market at Scott City; that the defendant Whiteman receives, stores, handles, displays, offers for sale and sells to ultimate consumers; that on May 24, 1951, Whiteman sold to plaintiff's mother, who paid the necessary consideration therefor, some bottles of Pepsi-Cola which she took to her home; that thereafter, on the same day, plaintiff, who was going in an automobile to stay all night with a neighbor girl, took two of the bottles so purchased, and as she entered the automobile laid them on a quilt covering the front seat, and as she was bending over the bottles one of the bottles of Pepsi-Cola exploded in plaintiff's face, with the result that a particle or particles of glass from the exploded bottle struck and lacerated her nose and entered and punctured her left eyeball. Plaintiff alleged that at all times material, from the time the bottle of Pepsi-Cola was removed from Phil's Market, where it was sold to her by defendant Whiteman, until the bottle exploded in her face, it had been handled carefully, and that the explosion of the bottle of Pepsi-Cola was not caused by or due to any fault, negligence or improper handling of the same on the part of plaintiff. It was further alleged:

". . . said bottle would not have exploded if due care had been used by defendants; all the facts and circumstances of and concerning the manufacture of said Pepsi-Cola, the bottle in which same was contained, and the method

of bottling and distributing same, are peculiarly and exclusively within the knowledge of the defendants, and not within the knowledge of the plaintiff."

It was further alleged (Paragraph 7):

"Plaintiff alleges that at all times material herein, the bottle of Pepsi-Cola which exploded in this plaintiff's face was solely and exclusively within the successive possession and control of each and all of the defendants, during its manufacture, bottling, inspection, handling, storage, transportation, distribution, sale or user and during the time in which the negligent acts of the defendants occurred.

"Plaintiff does not know, and therefore, does not attempt to allege or describe specific acts of negligence of which the defendants may have been guilty, and that may have been the proximate cause of the injuries to the plaintiff herein described; but, the plaintiff states and alleges that the explosion of the aforedescribed bottle of Pepsi-Cola with the resulting injury to the plaintiff, was an occurrence which would not have taken place except for some act or acts of negligence of the defendants in the manufacture, bottling, inspection, handling, storage, transportation, distribution, sale or user thereof. Plaintiff alleges that the explosion of said bottle of Pepsi-Cola and the resulting injuries to the plaintiff, were the direct result of some act or acts of negligence on the part of the defendants while in the successive exclusive possession and control of the manufacture, bottling, inspection, handling, storage, transportation, distribution, sale, or user of the said bottle of Pepsi-Cola."

The remainder of the petition was devoted to a description of plaintiff's injuries and treatment and the prayer for relief.

There was a second cause of action in which plaintiff made all of the allegations of her first cause of action, except paragraph 7, a part by reference, and further alleged:

"Plaintiff further alleges that in manufacturing, handling, distributing and selling the aforedescribed bottle of Pepsi-Cola, the defendants and each of them impliedly warranted to the public of which this plaintiff was an ultimate consumer, the article so manufactured, distributed, handled, and sold was fit and safe for human consumption, and was so manufactured, bottled, handled, and sold in such a manner as not to be inherently or imminently dangerous. The plaintiff relied upon said warranty. The explosion of said bottle of Pepsi-Cola with resulting injuries and damages to the plaintiff was the proximate result of the negligent breach of said warranty by all the defendants in their manufacture, bottling, distribution, handling and selling of said article."

Counsel for the respective defendants in their briefs in this court present as the principal question for our determination the contention that so far as the action is predicated upon the doctrine of *res ipsa loquitur* it cannot be applied because there are three defendants; that the doctrine does not lie where there are plural defendants. The point is not well taken. It is true the doctrine is applied in many

cases where there is but one defendant and the rule of its application requires that he be in exclusive possession or control of the thing which is alleged to cause the injury. But the rule is not limited to that. In 45 C. J. 1216 it is said:

"According to some authorities in order to invoke the doctrine it must appear that the injuring agency was under the control or management of defendant at the time of the accident. However it has been held that there is nothing in the reason for the rule or the principles upon which it is founded to support the contention that its application is so limited." (Citing and quoting from *Bottling Co. v. Sindell,* 140 Md. 488, 117 A. 866, as follows:)

"The 'control' referred to in the statements and definitions of the doctrine of res ipsa loquitur is not necessarily control of the injurious agency at the time of the negligent act which caused the injury."

This was a case of plural defendants. Apparently plaintiff recovered a judgment against all of them. The manufacturer of the beverage alone appealed and contended the doctrine of *res ipsa loquitur* did not apply to it for the reason that it was not in control at the time of the injury. This contention was denied and the judgment was affirmed.

In 65 C. J. S. 1014, it is said:

"However, the doctrine may be availed of as against plural defendants who were, under the circumstances involved, joint tort-feasors."

In *Loch v. Confair, Appellant,* 372 Pa. 212, 93 A. 2d 451 (decided January 5, 1953), the facts were plaintiff and his wife were shopping in an A. & P. super-market; that when the husband was picking up two bottles of ginger ale, one in each hand, from the bottom shelf of a soft drink display, the bottle in his right hand burst and a piece of glass struck and cut the wife, resulting in a serious injury. Suit for damages was brought against the A. & P. Company and the Confair's Beverage Company, which had bottled the ale. The trial court entered a nonsuit against the A. & P. Company and gave a binding instruction to the jury to find for the beverage company. The court en banc took off the nonsuit and awarded plaintiff a new trial as to the beverage company, from which it appealed, contending that the doctrine of *res ipsa loquitur* was not applicable to it because it did not have exclusive possession of the bottle at the time it burst. This contention was denied. The reasoning of Chief Justice Horace Stern, who wrote the opinion for the court, seems so applicable to the case before us that we feel justified in quoting it at length:

"Viewing realistically the situation presented by the circumstances of the present case, it is obvious that, so far as the evidence discloses, the wife plain-

tiff was not injured through any fault of her own, and therefore, if the occurrence of the accident was due to negligence on the part of either of the defendants, plaintiffs should be entitled to redress. It is clear too that the breaking of the bottle could have resulted only from a defect in the bottle itself, or from an excessive internal pressure due to over-carbonation, or from the subjection of the bottle to some extreme atmospheric or temperature changes, or from some mishandling, as for example, the striking of it by a hard object. Manifestly it would be entirely beyond the ability of the plaintiffs to ascertain and establish which of these possibilities was in fact the cause of the accident, whereas the defendant Beverage Company could readily explain the equipment and the methods employed by it in bottling the ale and the defendant A. & P. Company was equally in a position to explain the manner in which it handled, displayed and protected the bottles placed on its shelves for sale. It would seem, therefore, notwithstanding the limitations on the applicability of the doctrine of res ipsa loquitur and exclusive control previously referred to, that reason and justice alike should entitle plaintiffs to the benefits of those methods of establishing a prima facie case. Plaintiffs having testified to the manner in which the accident occurred, the burden should then rest upon the defendant A. & P. Company to show that after the bottle came into its possession it was not subjected to any mishandling or to any unusual atmospheric or temperature changes. The duty would then devolve upon the Beverage Company to establish that it conducted its operations with due care and according to the usual and proper methods generally employed in the bottling industry. It would then have been for the jury to decide whether such explanations satisfactorily exculpated either or both defendants from the charge of negligence, having in mind as to the defendant Beverage Company that it might be humanly impossible, even with the best of care, to discover every latent defect in every one of possibly hundreds of thousands of bottles or to prevent a possible excess of pressure in perhaps a single one of them, and having likewise in mind as to the defendant A. & P. Company that it might be equally impossible to prevent a bottle on a shelf from being struck or otherwise mishandled by some careless customer in a crowded store. In other words, it might be found that the accident here in question was one that could not have been avoided by the exercise of reasonable care by either or both defendants judging them by any reasonable standard of duty, and if, in the opinion of the court, the jury capriciously concluded otherwise, the remedy would lie, as always under such circumstances, in the granting of a new trial.

"In view of what has been said it is clear that the learned trial judge should not have entered a nonsuit in favor of the A. & P. Company, but should have kept both defendants in the case until final verdict, so that their respective liabilities, if any, could be better determined and each be given the opportunity as well as the duty of establishing that it was not guilty of any negligence that resulted in the accident. The court en banc, therefore, removed the nonsuit entered in favor of the one defendant and granted plaintiffs a new trial as to the other; such action was proper in the light of the circumstances and principles herein discussed."

In *Ybarra v. Spangard*, 25 Cal. 2d 486, 154 P. 2d 687, plaintiff had consulted a doctor Tilley, who diagnosed his ailment as appendicitis

and made arrangements for an appendectomy to be performed by Doctor Spangard at a hospital owned and managed by Doctor Swift. Plaintiff was taken to the hospital, given an anesthetic by another doctor and the operation was performed, with one or more nurses in attendance. When he was awakened from the anesthetic he felt a sharp pain about half way between the neck and the point of the right shoulder. He complained to the nurse and the doctor who gave him diathermy treatments while in the hospital. The pain in the arm continued, grew worse, developed paralysis and atrophy of the muscles about the shoulder. He sued each of the doctors, the nurse and the hospital predicating the action upon the doctrine of *res ipsa loquitur*. The trial court entered a judgment of nonsuit as to all defendants and plaintiff appealed. The supreme court reversed in an opinion by Gibson, C. J. In the opinion it was said:

"Defendants take the position that, . . . there is no showing that the act of any particular defendant, nor any particular instrumentality, was the cause thereof. They attack plaintiff's action as an attempt to fix liability *'en masse'* on various defendants, some of whom were not responsible for the acts of others; and they further point to the failure to show which defendants had control of the instrumentalities that may have been involved. Their main defense may be briefly stated in two propositions: (1) that where there are several defendants, and there is a division of responsibility in the use of an instrumentality causing the injury, and the injury might have resulted from the separate act of either one of two or more persons, the rule of *res ipsa loquitur* cannot be invoked against any one of them; and (2) that where there are several instrumentalities, and no showing is made as to which caused the injury or as to the particular defendant in control of it, the doctrine cannot apply. We are satisfied, however, that these objections are not well taken in the circumstances of this case.

"The doctrine of res ipsa loquitur has three conditions: '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' (Prosser, Torts, p. 295.) It is applied in a wide variety of situations, including cases of medical or dental treatment and hospital care. (Citing authorities.)

"There is, however, some uncertainty as to the extent to which res ipsa loquitur may be invoked in cases of injury from medical treatment. This is in part due to the tendency, in some decisions, to lay undue emphasis on the limitations of the doctrine, and to give too little attention to its basic underlying purpose. The result has been that a simple, understandable rule of circumstantial evidence, with a sound background of common sense and human experience, has occasionally been transformed into a rigid legal formula, which arbitrarily precludes its application in many cases where it is most important that it should be applied. If the doctrine is to continue to serve a useful

purpose, we should not forget that 'the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.' (9 Wigmore, Evidence [3d ed.], § 2509, p. 382, and authorities cited.)"

The judgment of the trial court was reversed. Upon a trial later judgment was rendered for plaintiff as against each of the defendants. This judgment was affirmed upon appeal. (See, *Ybarra v. Spangard*, 93 Cal. App. 2d 43, 208 P. 2d 445.)

This case has been cited and followed in a large number of cases, not only in California but in other states, as shown by the Pacific Citator.

In *Schroeder v. City & County Savings Bank, Albany*, 293 N. Y. 370, 57 N. E. 2d 57, plaintiff was injured when, at the request of police, he was aiding to make secure a barricade which had been constructed for repairs to the bank building and which had collapsed. He sued the bank, two construction companies, and others for damages. The pertinent portion of the opinion reads:

"The trial court correctly charged the jury after the defendants had rested at the close of plaintiff's case without putting in any evidence, that the doctrine of *res ipsa loquitur* was applicable. (*Galbraith v. Busch*, 267 N. Y. 230, 234; *Foltis, Inc., v. City of New York*, 287 N. Y. 108, 116.) After the jury had returned a verdict against the defendants Bank, Sano-Rubin and M. Gerber Construction Company, Inc., the trial court set aside the verdict as against the latter two defendants. We think that was error. The *three defendants either simultaneously or in necessary rotation*, with nondelegable supervision always remaining in the Bank, were in possession of the instrumentality which caused the injuries to plaintiff. None of the three defendants put in any defense. They were the ones who knew the cause of the collapse. It is not necessary for the applicability of the *res ipsa loquitur* doctrine that there be but a single person in control of that which caused the damage. Where, as here, one or some or all of three interdependent defendants are in control and burdened with supervision of a street barricade, it is for them to explain their action and conduct when it collapses with resultant damage to another." (Citing authorities. Our italics.)

The question of plural defendants in an action predicated on the doctrine of *res ipsa loquitur* is not altogether new in this state. In *Woods v. Kansas City, K. V. Rld. Co.*, 134 Kan. 755, 8 P. 2d 404, the defendants were two railroad companies. In *Ratliffe v. Wesley Hospital*, 135 Kan. 306, 10 P. 2d 859, the defendants were a hospital and a nurse. In *Starks Food Markets, Inc., v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102, there were numerous defendants.

Although this court directed demurrers to the petitions to be sustained it was not for that reason. In *Waterbury v. Riss & Company,* 169 Kan. 271, 219 P. 2d 673, there were four defendants. In that case the point was specifically urged by counsel for defendants and was determined adversely to them. There is no reason to limit the number of defendants to one in a case where the circumstances pleaded disclose that two or more may be liable.

Counsel for the appellants Nold and Elsey argue that the doctrine of *res ipsa loquitur* cannot apply to them because they were not in "control" of the bottle of Pepsi-Cola at the time it exploded, and cite cases holding that one of the essentials of the doctrine is that defendant be in the exclusive control at the time of the accident. Those statements were made in cases in which the circumstances disclosed that the negligence, if any, must have occurred at the time of the accident. The real test is whether defendants were in control at the time of the negligent act or omission which either at that time or later produced the accident. The fact that plaintiff did not know which one of the defendants was guilty of the negligence which was the cause of the accident, or when or where it took place, was the reason for naming all of them as parties defendant.

The second cause of action is predicated upon the alleged breach of an implied warranty that the bottle of Pepsi-Cola had been "so manufactured, bottled, handled, and sold in such manner as not to be inherently or imminently dangerous." Counsel for appellants construe this allegation as not being an attempt to claim that the contents of the bottle were unwholesome, and cite *Parks v. Pie Co.,* 93 Kan. 334, 144 Pac. 202, and other cases which pertain only to unwholesome food. We think the allegation in the petition is not limited to the unwholesomeness of the contents, but that the allegation pertains to the bottle as well as the contents. It is true the question of the wholesomeness of Pepsi-Cola, generally speaking, is not involved, but the particular bottle that exploded and its contents are both involved. We are not impressed with the suggestion that if plaintiff knew the bottle was charged with gas that no recovery can be allowed. Perhaps all the plaintiff knew about it was that the contents were a refreshing drink. Neither are we greatly concerned about the privity of contract. Each of these defendants intended the bottle of Pepsi-Cola to be sold, and it was alleged in the petition that it was sold and the consideration paid therefor.

Counsel for the appellant Whiteman contend that the second cause of action is predicated upon contract, and argue that it is improper to join such a cause of action with one for tort, as alleged in the first cause of action, citing *Burks v. Aldridge*, 154 Kan. 731, 121 P. 2d 276, and *Frier v. Proctor & Gamble Distributing Co.*, 173 Kan. 733, 252 P. 2d 850. Neither of these cases is helpful to appellant. In the Burks case plaintiff sued a highway contractor for damages resulting from the alleged negligence of the contractor in constructing a highway, and joined as a defendant the surety on the contractor's bond. This court held that was improper for the reason that the bond in question was an indemnity bond as distinct from a liability bond.

In the Frier case the plaintiff sued the manufacturer and distributor of a washing compound, the use of which she alleged caused injury to her hands. Her testimony disclosed she used for several months the compound after she learned that it irritated and otherwise injured her hands. The other witnesses she called testified that their hands had been irritated by the compound, but they had ceased its use on discovering that fact. At the close of the evidence, and when the case was being submitted to the court on its merits, the question was raised whether the case was being prosecuted on negligence, in which plaintiff might be barred by her own conduct respecting the use of the washing compound, or upon contract. Counsel for plaintiff stated they were proceeding upon contract, express and implied. The court expressed the view that there was no privity of contract between plaintiff and either of the defendants. Attorneys for the plaintiff concurred in that view. Thereupon the trial court rendered judgment for defendants. The trial court was justified in its ruling based upon this concession. Whether counsel for plaintiff went too far in conceding there was no privity of contract between the parties was not suggested in the record nor discussed in the opinion. There is substantial authority to the contrary, which naturally was not referred to in the opinion. The only point upon which the case can be relied upon as an authority is that under some circumstances the plaintiff in such a case, after all the evidence is in, may be called upon to make an election as to whether he is proceeding upon negligence or contract.

The authorities make it clear that an implied warranty does not necessarily involve a contract. In A. L. I., Rest., Security, p. 234, § 82j, the term is defined as follows:

"The term 'implied warranty' denotes an obligation imposed by law where there is no representation or promise."

Black's Law Dictionary defines implied warranty as "A warranty raised by the law as an inference from the acts of the parties or the circumstances of the transaction," giving illustrations.

In Bouvier's Law Dictionary, p. 3429, as pertains to sales, it is said:

"An *implied* warranty is one which, not being expressly made, the law implies by the facts of the sale." (Many illustrations are given.)

In 77 C. J. S. 1155, the term is defined as follows:

"Implied warranties are created by operation of the law and they do not arise from any agreement in fact of the parties, but they will not be created contrary to the manifest intention of the parties. The principle of implied warranties is an exception to the rule of caveat emptor."

5 Williston on Contracts, § 1505, reads:

"Warranty may, but need not, be based on contract.

"There can be no doubt now, of course, that a seller may promise, in consideration of the purchase of goods from him, that he will be answerable for their present, or, indeed, for their future condition. Nor is it open to doubt that a seller who in terms warrants the goods which he sells thereby enters into such a contract. But when a seller is held liable on a warranty for making an affirmation of fact in regard to goods in order to induce their purchase, to hold that such an affirmation is a contract is to speak the language of pure fiction. It should not be the law and it is not the law that a seller who by positive affirmation induces a buyer to enter into a bargain can escape from liability by denying that his affirmation was an offer to contract. A positive representation of fact is enough to render him liable. The representation of fact which induces a bargain is a warranty. (Citing *Foote v. Wilson,* 104 Kan. 191, 195, 178 P. 430.) In truth, the obligation imposed upon the seller in such a case is imposed upon him not by virtue of his agreement to assume it, but because of a rule of law applied irrespective of agreement. The obligation in such a case is quasi contractual, and at least if the seller knows the falsity of his representation there is also a tort.

"The confusion of thought as to the nature of a warrantor's obligation seems to be in great measure due to the assumption that the basic character of the obligation is always the same, and to the consequent allowance in modern times of the remedy of assumpsit or its equivalent for breach of any warranty, whether in reality constituting a contract or only a representation. But assumpsit was not allowed as a remedy for breach of warranty until near the close of the eighteenth century. The law of warranty is older by a century than special assumpsit. The action on a warranty was regarded as an action of deceit and was thus conceived of at the outset as an action of tort. And a declaration in tort without an allegation of *scienter* is still generally regarded as permissible. The decisions so holding are not, as is sometimes supposed, a mere following of early authority after the reason for the earlier rule has ceased to exist; *they involve a recognition of the fact that warranty is a hybrid between tort and contract.*

"Nor is the law of sales the only place where express or implied innocent misrepresentations may impose liability as a warrantor on the party making them. *A restaurant-keeper may on this principle be liable for furnishing poor food, and one who hires building or construction work may make himself liable for the adequacy of the plans which he furnishes.*" (Our italics.)

In Pollock on the Law of Torts, 15th Ed., 422, it was said:

"Wherever the parties have come into such a relation that a duty to take proper care can be established without reference to any contract, there the violation of that duty by negligence is a tort, whether it consist in commission or in omission, and whether there be in fact a contract or not."

On page 417 of Pollock it is also said:

"Wherever there is a contract to do something, the obligation of the contract is the only obligation between the parties with regard to the performance, whether there was a duty antecedent to the contract or not. But injury which would have been a tort, as a breach of a duty existing at common law, if there had not been any contract, is still a tort."

This thought is not new. In 2 Wendell's Blackstone 443, after stating agreements and contracts, the author says:

"This contract or agreement may be either express or implied. *Express* contracts are where the terms of the agreement are openly uttered and avowed at the time of the making, as to deliver an ox, or ten load of timber, or to pay a stated price for certain goods. *Implied* are such as reason and justice dictate, and which, therefore, the law presumes that every man undertakes to perform." (Giving examples.)

And in volume 3, page 159, after speaking of express contract, the author says:

"From these *express* contracts the transition is easy to those that are only *implied* by law. Which are such as reason and justice dictate, and which, therefore, the law presumes that every man has contracted to perform, and upon this presumption makes him answerable to such persons as suffer by his non-performance."

And at page 162 it is said:

"A second class of implied contracts are such as do not arise from the express determination of any court, or the positive directions of any statute; but from natural reason, and the just construction of law. Which class extends to all presumptive undertakings or *assumpsits;*   .   .   ."

The same doctrine permeates the opinion in *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, 390, 111 N. E. 1050. After stating the facts and discussing some cases the court used this language:

"There is here no break in the chain of cause and effect. In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows

out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law."

In *Schuler v. Union News Co.*, 295 Mass. 350, 4 N. E. 2d 465, the action was for death alleged to have been caused from poisoning by eating a turkey sandwich at defendant's restaurant. The petition was in three counts. The first was brought in tort for negligently causing death. The second count was for negligence resulting in conscious suffering, which was held unimportant. The third count was upon an implied warranty that the turkey sandwich was fit for food. On the first count the trial court directed a verdict for defendant, to which plaintiff excepted, and on the third count plaintiff recovered a verdict of $3,500, to which defendant excepted. The supreme judicial court of Massachusetts sustained plaintiff's exceptions and overruled defendant's exceptions. In the opinion the court said (p. 352):

"The third count for breach of warranty was properly included in the declaration in an action of tort. An action of tort, as well as an action of contract, may be maintained upon a false warranty. This was definitely laid down by Chief Justice Shaw in *Norton v. Doherty*, 3 Gray, 372 [63 Am. Dec. 758], where a judgment for the defendant in such an action of tort was held to bar a later action of contract upon the same warranty." (Citing many authorities and further holding that the case should have gone to the jury on the first count.)

In the late case of *Mahoney v. Shaker Square Beverages* (Ohio), 102 N. E. 2d 281, an action for damages resulting from the explosion of a bottle of ale, plaintiff's case was based upon a claim of implied warranty. Defendant demurred on the ground that no cause of action was stated. There was much discussion in the opinion and citation of authorities. In the opinion the court said (p. 288):

"It seems to be the law of this state that when the ultimate consumer of goods may maintain an action in tort and one for violation of the warranty, he may choose which course to pursue or may join the two causes of action in the same complaint."

In *Santa Maria Water Con. & Imp. Dist. v. Towery Equip. Co.* (Tex. App.), it was held (241 S. W. 2d 755):

Party has right to sue for breach of contract and alternatively for damages for tort where both claims grow out of same transaction and can conveniently be litigated together. Rules of Civil Procedure, rule 48.

In *Int'n'l Ptg. Pres'm'n & Assts. Union v. Smith*, 145 Tex. 399, 198 S. W. 2d 729, 730, it was held:

In actions against public service corporations for breach of a duty which is

imposed by law and is also provided for by contract, the action may be both in "contract" and in "tort," having regard to the most complete redress which, upon the facts stated, the law can afford.

In *Buck v. Jones Bakery*, 160 Misc. 101, 289 N. Y. S. 386, it was held:

Plaintiff seeking damages allegedly suffered through purchase and consumption of impure loaf of bread *held* entitled to join in one complaint cause of action based on alleged negligence in manufacture and sale of bread with one based on alleged breach of warranty where acts of manufacture and sale were identical in each cause of action (Civil Practice Act, § 258, as amended by Laws 1935, c. 339).

In *Warren v. Putnam*, 263 App. Div. 474, 33 N. Y. S. 2d 635, it was held:

1. A cause of action for fraud, inducing making of a contract by false representations, may be united in the same complaint with causes of action for breaches of such contract, where the causes of action arise out of the same transaction, connected with the same subject of action.

3. It is permissible to plead liability on two different theories in the same complaint if liability arose in same transaction or series of transactions.

In *Leoni v. Delany* (Cal.), 179 P. 2d 820, it was held:

"4. Where a reasonable doubt exists as to whether one seeking recovery for services rendered is entitled to recover upon an express or implied contract, he may plead a claim upon each and recover according to the proof.

"5. Different causes of action may be stated to meet such phases of the evidence as may be fairly and reasonably anticipated."

In *Cash Crops Cooperative v. Minnesota Valley C. Co.*, 257 Wis. 619, 44 N. W. 2d 563, in par. 2 of N. W. Syl., it was held:

"Where a cause of action in contract and a cause of action in tort were united in the same complaint, and clearly affected the same parties, and same parties constituted all the parties to the action, and did not require different places of trial and causes were stated separately in the same complaint, the causes of action were properly united."

In *Kniess v. Armour & Co.*, 134 O. S. 432, 441, 17 N. E. 2d 734, 119 A. L. R. 1348, plaintiff alleged that he purchased pork from the grocer, which he had purchased from Armour & Co., which was infected with parasites peculiar to swine, which he ate and became ill. Most of the opinion deals with the question of the removal of the action to the federal court by Armour & Co. The court sustained Armour & Co.'s contention that the case should be removed, and said:

"This not only disposes of that contention of appellant, Armour & Company, but sets forth that Burmeister could be held liable on contract.

"However, the liability of Burmeister as a retailer might sound in tort as well as in contract for as has been well said the action on a 'warranty is a hybrid between tort and contract.'" (Citing Williston on Contracts (Rev. Ed.) 4200, section 1505, and other authorities.)

In *Davis v. Van Camp Pkg. Co.*, 189 Iowa 775, 176 N. W. 382, it was held:

"1. A manufacturer who prepares and puts upon the market in sealed packages an article of food for human consumption, is held not only to the *highest degree* of care in preparing such article, but is also held to impliedly warrant to the ultimate consumer that the article is fit for human consumption. It follows that the consumer, in purchasing such an article, is not shackled by any rule of *caveat emptor*, and, if injured, without want of care on his part, by eating such article, he may maintain an action for damages against the manufacturer, both (1) for negligence and (2) for breach of implied warranty, even though there is no *privity of contract* between the parties."

In *Day v. Grand Union Company and The F. & M. Schaefer Brewing Co.*, 304 N. Y. 821, 109 N. E. 2d 609, a customer brought an action against the operator of a self-service store and brewing company to recover for injuries sustained by the customer in a bottle of beer, which exploded as the customer picked it off the counter of self-service grocery store. The trial court dismissed the complaint at the close of plaintiff's evidence. The appellate division, 113 N. Y. S. 2d 436, reversed the judgment and ordered a new trial, holding the evidence established a prima facie case against the storekeeper. He appealed to the court of appeals and contended there was no evidence of his negligence and that the facts did not establish a prima facie case against him and that there was no breach of implied warranty of merchantable quality of the bottle of beer, as neither a sale nor a contract of sale had been made. The decision of the court of appeals reads:

"Order affirmed and judgment absolute ordered against appellant on the stipulation, with costs in all counts. Plaintiff established prima facie a cause of action in negligence. We pass upon no other question."

In *K. P. Rly. Co. v. Kunkel*, 17 Kan. 145, in which plaintiff recovered a judgment against the railway company for personal injuries, one of the questions was whether the action was in tort, in which case it was barred by the statute of limitations pertaining to tort actions, or whether it was in contract and within the statute of limitations pertaining to actions on contract. In syllabus 3 the court said:

"A petition which alleges that the defendant is a common carrier, that it made a certain contract of carriage with the plaintiff, receiving its pay there-

for, that plaintiff entered upon its cars in pursuance of such contract, and that defendant, in violation of its contract, did not stop at the place to which it had agreed to carry him, but carried him some distance beyond, and then by a sudden starting of its train threw him down and injured him while attempting to get off the train in obedience to its orders, state a cause of action arising *ex contractu.*"

In the opinion (p. 166) the court (Justice Brewer speaking), used this language:

"A second position of counsel is, that the cause of action is not one arising from contract, but is founded upon tort, and that therefore it was barred any way, even if August instead of March was the time of the injury. This claim cannot be sustained. While the distinction between actions on contract and those for tort is plain and broad, yet, as is well said in the case of *Staley v. Jameson,* 46 Ind. 159, on which counsel mainly rely, and in which is quite a full discussion of the question, it is not always easy to determine from the allegations of the petition in which class the action must be placed; for contracts are often alleged in actions which clearly sound in tort, and as often tortious acts and conduct of the defendant are averred in actions purely *ex contractu.* And often the plaintiff has his election upon the same state of facts, whether to bring an action *ex contractu,* or one as *ex delicto.*"

In 1 C. J. S. 1098, § 44, Contract and Tort, the black letter statement reads:

"An action *ex contractu* differs from an action *ex delicto* in that it involves a breach of duty arising from contract, while the action *ex delicto* involves a breach of duty imposed by law."

The third paragraph of the discussion under the section embodies as a part of the text the language used by Justice Brewer in the Kunkel case (17 Kan. 145), as follows:

"While the general distinction between actions in contract and in tort is clearly defined and well understood, it is often difficult to determine whether a particular action is the one or the other, particularly under the code system of pleading, and where under the circumstances of the particular case either form of action might be maintained. A treatment of the distinction between actions in contract and in tort assumes a twofold aspect, involving on the one hand a consideration of the essential nature of the cause of action, as for the purpose of determining which is the proper or only available form of remedy, and whether an action which is clearly in the one form or the other can be maintained; and on the other hand, particularly where either form of action might be maintained, a consideration of the question as to which form plaintiff has in fact resorted to. In some cases both features of this question are involved, and they are so closely related that they may properly be, and are, considered together in §§ 45-51."

While the Kunkel case has been cited many times, as shown by our Citator, we find it cited only twice on this point in our own

Reports. In *Kipp v. Carlson,* 148 Kan. 657, 84 P. 2d 899, on page 660, we find the following:

"In *K. P. Rly. Co. v. Kunkel,* 17 Kan. 145, 166, it was said:

" 'While the distinction between actions on contract and those for tort is plain and broad, yet, . . . it is not always easy to determine from the allegations of the petition in which class the action must be placed; for contracts are often alleged in actions which clearly sound in tort, and as often tortious acts and conduct of the defendant are averred in actions purely *ex contractu.*'

"In Pomeroy on Code Remedies, 5th ed., section 464, it is stated:

" 'But when the contract relied upon is implied, and is simply the fictitious promise which the law infers from the tortious acts themselves, it may be doubted whether it is possible, in accordance with the true principles of the reformed pleading, to frame a complaint or petition in all cases which shall show on its face that the plaintiff has elected to bring his action either in tort or on contract. In one class of liabilities it is certainly possible to do so; namely, in those which result from the defendant's fraudulent representations and deceits. The allegation of a *scienter* is indispensable in the action *ex delicto* based upon such a liability, and distinguishes it in a marked manner from the correlative action based upon the implied promises. But when the liability results from the wrongful taking or conversion of chattels, from trespasses, negligences, or other similar kinds of wrongs, the very facts which are alleged in the action of tort are the facts from which the promise is inferred; and, according to the true theory of pleading, these facts must also be stated in the action *ex contractu,* without any legal inferences or conclusions. It conclusively follows, that in this general class of liabilities, as the facts which constitute the cause of action are the same in each, the averments of the complaint or petition must be the same in each kind of action, if the essential principles of the reformed system are complied with, so that it is impossible to indicate upon the face of the pleading alone the election which the plaintiff has made.' "

The court continued:

"When doubt exists as to whether the action is based on tort or quasi contract, it has often been held by this court that words appropriate to an action for tort will be disregarded, and the petition will be interpreted as counting on quasi contract," citing 127 Kan. 547, 78 Kan. 758, 148 Kan. 388 and 79 Kan. 126. The pertinent syllabus reads:

"The nature of a cause of action, whether based on tort or implied contract, is to be determined from the allegations of the petition. Where the petition states a cause of action in contract, and the case was submitted to the jury on that theory, words appropriate to an action in tort will be considered as surplusage."

The case is again cited in *La Harpe Fuel Co. v. City of Iola,* 152 Kan. 445, 448, 105 P. 2d 900. In that case plaintiff agreed to sell to defendant city and defendant agreed to purchase a certain quantity of gas for a period of five years. It was alleged the defendant failed and neglected to take the amount it agreed to take and the action

was to recover damages for failure to do so. Beginning at page 447, it was said:

"We are confronted with an elaborate argument that the petition was not framed upon a definite theory. That question usually arises when there is doubt whether the action sounds in tort or contract. (*Sluss v. Brown-Crummer Inv. Co.,* 137 Kan. 847, 22 P. 2d 965; *Kipp v. Carlson,* 148 Kan. 657, 84 P. 2d 899; *K. P. Rly. Co. v. Kunkel,* 17 Kan. 145, 166.) The present action is in contract. The petition was formulated upon a definite theory."

The case is also cited in annotation 20 A. L. R. 2nd 338, in an annotation on Passenger's Action—Limitation of time. Also, in 157 A. L. R. 782 in an annotation on Injury to Person—Action *ex contractu.*

In 71 C. J. S. 227, Pleading, § 92, it is said:

"Good practice requires the plaintiff's initial pleading to proceed on a single and definite theory; but, under modern code systems, his pleading may be held sufficient if it states a cause of action on any theory." (Citing many cases, including *Grannell v. Wakefield,* 169 Kan. 183, 217 P. 2d 1059; *Sinclair Prairie Oil Co. v. Worcester,* 163 Kan. 540, 183 P. 2d 947; *Dellinger v. County Social Welfare Board of Harper County,* 155 Kan. 207, 124 P. 2d 513; *Lofland v. Croman,* 152 Kan. 312, 103 P. 2d 772; *Fleming v. Campbell,* 146 Kan. 294, 69 P. 2d 718, and *Scherger v. Union Nat. Bank,* 138 Kan. 239, 25 P. 2d 588.)

Turning to our own cases we note the case of *Malone v. Jones,* 91 Kan. 815, 139 Pac. 387, and the opinion denying rehearing, 92 Kan. 708, 142 Pac. 274. This was an action for damages from eating tainted meat. From the reading of the opinion it appears that this was brought simply as an action for damages for serving meat not suitable for human consumption.

In the case of *Parks v. Pie Co.,* 93 Kan. 334, 144 Pac. 202, the opinion discloses that the action was predicated upon the negligence of defendant in the manufacture and in the method of handling the pie, which it sold to a retail dealer, who sold it to plaintiff, who became ill from eating it. The decision was apparently placed on the doctrine of an implied warranty. Syllabus 1 reads:

"A dealer who sells human food for immediate consumption does so under an implied representation and guaranty that it is wholesome for the purpose for which it is sold."

In *Stanfield v. F. W. Woolworth Co.,* 143 Kan. 117, 53 P. 2d 878, the petition is not available for consideration, but the two pertinent paragraphs of the syllabus read:

"2. One who, for compensation, sells or provides food for immediate consumption to another impliedly warrants the food to be wholesome. This is true whether the transaction is in all of its aspects properly classified as a sale.

"3. One to whom, for a compensation, food is sold or provided for immediate consumption, and who suffers food poisoning as a result of consuming the food, may maintain an action upon the implied warranty of its wholesomeness without alleging or proving negligence in the selection or preparation of the food by the one who sold or provided it."

The opinion cites and comments on a number of cases.

In *Swengel v. F. & E. Wholesale Grocery Co.*, 147 Kan. 555, 77 P. 2d 930, the petition clearly discloses that plaintiff relied both upon negligence and upon implied warranty. The pertinent paragraphs of the syllabus read as follows:

"1. In any case where a dealer sells articles of food for immediate human consumption, the purchaser may rely upon an implied warranty that such articles are wholesome and not deleterious, and in the event he sustains injuries from consumption thereof, he may waive any tort there may have been and maintain his cause of action upon such implied warranty.

"2. Where articles of food for human consumption are manufactured or packed by a manufacturer or packer, and by a series of transactions reach a retail dealer who sells to the consumer, the manufacturer or packer, each intermediate dealer and the retail seller impliedly warrant that such articles of food are wholesome and fit for immediate human consumption."

In *Bradley v. Conway Springs Bottling Co.*, 154 Kan. 282, 118 P. 2d 601, the syllabus reads:

"Under the facts set out in the opinion the doctrine of *res ipsa loquitur* was properly relied upon by plaintiff in an action for damages for personal injuries resulting from the explosion of a bottle of Pepsi-Cola."

The case was predicated on negligence. There had been a trial by jury, which was unable to agree. Defendant appealed, contending its demurrer to plaintiff's evidence should have been sustained.

Under our own cases it would seem that a plaintiff may rely upon negligence alone or upon implied warranty, or may plead negligence and recover on implied warranty; or, if he pleads both, he may waive tort and recover on implied warranty.

From the petition it is certain plaintiff received a severe injury without fault of her own. If the proper parties are made defendants the court should not be too particular about the theory upon which she recovers. The petition should be considered as a whole. In fact, the so-called second cause of action makes all of the first cause of action, except the seventh paragraph, a part of it by reference. The seventh paragraph of the first cause of action is the one that specifically pleads the doctrine of *res ipsa loquitur*. The second paragraph of the second cause of action is the one that pleads a breach of implied warranty. Since the breach of an implied war-

ranty usually results from negligence of defendants or some of them, we see no detriment resulting to defendants from the fact that plaintiff pleads negligence upon which she relies in paragraph seven of the first cause of action. This is particularly true in view of the fact that plaintiff may waive the tort pleaded and rely alone upon violation of the implied warranty, as held in *Swengel v. F. & E. Wholesale Grocery Co.*, supra.

The result is that the pleading of the second cause of action does not render the petition demurrable. The judgment of the trial court is affirmed.

SMITH, J., not participating.

WEDELL, J. (concurring in part and dissenting in part): Limitations of time and other duties preclude an extended treatment of questions involved.

This action was framed in two counts. The first was based on the doctrine of *res ipsa. loquitur*. It sounds in negligence, in tort. The second count was based on breach of implied warranty. It sounds in contract.

I would have difficulty sustaining the first count on the basis of some of our past decisions involving the doctrine of *res ipsa loquitur* and I shall not endeavor to do so. It has been and now is my view that we have applied the doctrine too narrowly in some of our cases. Although I doubt the soundness of parts of some of the opinions from other jurisdictions cited in the opinion I concur in the result reached by the court on the first cause of action.

The second count, as stated, is based on implied warranty, contract. A warranty is a contract. I cannot agree that count can be tortured into an action in tort by alleging a "negligent breach of warranty." Whether the contract was breached as a result of negligence or deliberately is wholly immaterial insofar as the fundamental nature of the cause of action is concerned. It remained a cause of action to recover damages for breach of warranty. That plaintiff could waive the tort in an action such as this and sue on "implied warranty" has been definitely established (*Swengel v. F. & E. Wholesale Grocery Co.*, 147 Kan. 555, 77 P. 2d 930) but in my opinion she could not transform the contract action into a tort action. Moreover, she had already sued on tort in the first count.

I have no doubt the demurrers on the ground of misjoinder of causes of action on contract and tort should have been sustained.

G. S. 1949, 60-705 expressly authorizes the challenging of a petition by demurrer for improper joinder of causes of action where the misjoinder appears on the face of the petition. See, also, G. S. 1949, 60-601, on joinder of causes of action. It is unnecessary to extend the opinion with a long list of cases holding actions on contract and tort are distinctly inconsistent and may not be joined. See the numerous cases on the subject listed under the last two statutes cited. In addition thereto see, also, the recent case of *Frier v. Proctor & Gamble Distributing Co.*, 173 Kan. 733, 735, 252 P. 2d 850, which was an action against a manufacturer and the distributor of "Tide" to recover damages for injuries to a dishwasher's hands resulting from the use of the product. The trial court there required plaintiff to elect whether she was suing "on a contract of warranty or upon negligence." Both causes of action, as here, grew out of the same transaction. We held the ruling was proper and said, "The theories and bases of recovery are distinct and conflicting," and referred to *Burks v. Aldridge,* 154 Kan. 731, 121 P. 2d 276, and authorities there cited.

It is impossible for me to conceive of a case more directly in point on the question of misjoinder of actions on contract and tort than the Frier case, *supra.* To be sure the question there arose on a motion to elect after evidence was introduced but manifestly that does not change the question involved.

The ruling on a demurrer to a petition for improper joinder of causes of action is an appealable order and is expressly made so in order that a plaintiff may be compelled to frame properly, before the commencement of the trial, the issues which may be tried together. To hold otherwise is to nullify the statute making the ruling on demurrer appealable. It readily is conceded the practice in the various states differs. We are here concerned only with our own civil code and the construction we have placed thereon.

It also is well to observe that under the pleadings as now framed it would be entirely possible for a jury to render a verdict against one defendant on contract and against the others on tort. I do not believe that is permissible under the provisions of G. S. 1949, 60-601, and the cases cited thereunder.