No. 22,256.

JAMES H. BOOTH, *Appellee*, v. GEORGE SCHEER, *Appellant*.

SYLLABUS BY THE COURT.

1. WARRANTY—*Sale of Stallion—Sale by Vendee to Third Party with Similar Warranty—No Privity of Contract between Original Vendor and Third Party—Warranty is Personal.* Ordinarily there is no privity of contract between the original vendor of personal property and third persons who may purchase or acquire the property from the original vendee; and the original vendor's warranty is a personal obligation between him and his own vendee, and it does not run with the property like covenants concerning real estate.

2. SAME—*Original Vendor Not Bound to Defend Action on his Vendee's Warranty to Third Party.* The defendant traded a stallion to plaintiff and warranted the animal to be sound. The plaintiff, relying upon defendant's representations and warranty, traded the stallion to a third person, giving his subvendee the same sort of warranty as he had received from defendant. The third party sued the plaintiff for breach of warranty. Plaintiff notified defendant of the suit and requested him to take charge of the defense. Defendant declined. Plaintiff was subjected to a judgment, and in this action seeks recoupment against the defendant. *Held,* that the defendant was not bound to defend in the action of the third party against the plaintiff, nor is he concluded by its result; his warranty to plaintiff was personal; and he may defend against an alleged breach of his warranty without regard to the consequences which flowed from the suit of the third party on a similar alleged breach of warranty made by plaintiff to his subvendee.

Appeal from Brown district court; WILLIAM I. STUART, judge. Opinion filed December 6, 1919. Reversed.

*W. E. Archer,* of Hiawatha, for the appellant.

*W. F. Means,* of Hiawatha, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action grows out of an alleged breach of warranty in a horse trade.

The plaintiff Booth traded a stallion, "Cranmore King," and gave $550 in cash to the defendant Scheer for a stallion, "Nig," and a breeding jack.

Plaintiff alleged that defendant represented to him that the stallion "Nig" was sound and healthy and suitable for breed-

ing purposes, and that plaintiff relied thereon, but that such representation was false and fraudulent, and that defendant made such statement knowingly and for the purpose of cheating the plaintiff. He further alleged that three days after making this trade, plaintiff, still believing and relying on Scheer's representation, traded "Nig" to one Earl Walters for an agreed value of $400, and in that trade he represented that "Nig" was in good health and sound physical condition. He alleged that "Nig" was not a sound and healthy horse; that he was a windbroken "whistler" of little or no value; and soon thereafter Walters sued the plaintiff for damages on account of the false representation made to him by the plaintiff Booth, and Booth notified defendant of that action and requested him to appear and take charge of the defense. This Scheer failed to do, and Booth hired a lawyer and made a defense, but was defeated; and judgment was entered against him for $250 and interest. Plaintiff prayed for recoupment against Scheer.

Defendant admitted the trade, but denied the misrepresentation, and set up a cross claim for damages on account of alleged false representations of Booth touching the soundness of "Cranmore King."

The jury returned a verdict for one dollar in defendant's favor, and answered certain questions:

"1. Was there any change in the condition of health and soundness of the stallion traded by the defendant Scheer to the plaintiff Booth from the time the defendant traded such stallion to plaintiff until the plaintiff traded him to Earl Walters? Answer. No.

"2. Did the defendant represent to plaintiff that the stallion which defendant traded to plaintiff was sound when such trade was made? Answer. Yes.

"3. Did the plaintiff believe and rely upon such representation as being true when he traded for such stallion? Answer. Yes.

"4. What, if any sum, do you allow to the defendant by reason of any alleged unsoundness of the horse, 'Cranmore King'? Answer. Nothing."

"Special questions submitted by defendant:

"1. Was the wind of the stallion 'Nig' sound at the time defendant traded him to plaintiff? Answer. Yes.

"2. If the wind of said stallion 'Nig' was unsound at the time of the trade, did the defendant know it? Answer. No."

Plaintiff's motion *non obstante* for judgment on the special

findings and admitted facts was sustained, and judgment was entered for plaintiff for the sum he had to pay Earl Walters in the action which Scheer had declined to defend. Defendant's motion for judgment on the verdict was denied.

The defendant appeals. He complains of various matters, but his chief contention is that a warranty of a vendor of personalty does not run with the property, and therefore he was not bound by the judgment which Walters recovered against plaintiff.

The question presented by appellant has not heretofore required much attention in this jurisdiction. In *Thisler v. Keith,* 7 Kan. App. 363, 52 Pac. 619, Thisler and Schneider sold a stallion to Coder and warranted it to be sound. Coder sold the horse to Keith upon the same warranty. The horse proved to be unsound. Coder assigned to Thisler and Schneider certain notes given by Keith for the horse. They sued Keith on the notes, and he brought a cross action against them for breach of the warranty which they had given to Coder, and which in similar terms Coder had given to Keith. Keith prevailed three times before a jury, and the late court of appeals summarily ended the controversy, so far as the cross action was concerned, by holding, without discussion, that Thisler and Schneider were not liable to Keith on the warranty of the horse which they had given to Coder.

The general doctrine contended for by appellant seems to be settled in this country. With certain exceptions, like warranties in the sale of staple or trade-marked goods (*Nixa v. Lehmann,* 70 Kan. 664, 79 Pac. 141; *Roberts v. Anheuser Busch Brewing Assoc.,* 211 Mass. 449; *Conestoga Cigar Co. v. Finke,* 144 Pa. St. 159, 13 L. R. A. 438; *Mazetti v. Armour & Co.,* 75 Wash. 622, 48 L. R. A., n. s., 213, and some of these cases sound more in tort than in breach of warranty), the rule that warranties run with the property like covenants concerning real estate, or like indorsements on negotiable paper, does not apply in successive sales of ordinary chattel property. (See note in 51 L. R. A., n. s., 1111.) There is no privity of contract between the vendor in one sale and the subvendees of the same property in subsequent sales. Although the warranty may be couched in the same terms in each successive sale, the obligation of the warrantor in each sale is personal to

his own vendee, and it is no concern of the warranting vendor that his vendee may have been subjected to liability by a reiteration of the same warranty in a later sale of the property. Each seller is liable for his own contract and to the extent thereof, but that alone will not determine his prior vendor's obligation to him. Every succeeding vendor takes the chances on his own warranty; and he may, without having those chances foreclosed, decline to concern himself with litigation which arises between his vendee on a similar independent warranty given by the latter to a subsequent vendee. (*Smith & Melton v. Moore*, 7 S. C. 209, 24 Am. Rep. 479; *Smith v. Williams*, 117 Ga. 782.) On the general doctrine that a warranty upon the sale of personal property does.not run with the property, but that each reiteration of the warranty is a merely personal, independent obligation between each warrantor and his personal vendee, and creates no obligation on the part of the original warrantor to subsequent vendees, see: *Nelson v. Armour Packing Company*, 76 Ark. 352; *Van Winkle & Company v. Wilkins et al.*, 81 Ga. 93, 105; 24 R. C. L., 159, 161.

In 35 Cyc. 370, the rule is stated:

"Ordinarily a warranty is addressed to some particular person, and the buyer alone can avail himself thereof. A warranty on the sale of personalty does not run with the property, and assignees of or purchasers from the buyer cannot avail themselves thereof as against the original seller, unless the assignee or purchaser assumes payment of the original purchase-price, or the warranty is specifically assigned to the second purchaser, or by a usage of the trade a warranty inures to the benefit of subsequent purchasers."

In our examination of the law of this case, we have noted traces of a doctrine that a warranty of *title* sometimes runs with personal property (*Boyd, Ex., v. Whitfield*, 19 Ark. 447, and citations therein; 23 Cyc. 1272), but we have not pursued that inquiry as we have only to consider a warranty of soundness.

The soundness of a horse is so much a matter of opinion, and is so easily affected by change of care, or change of work, or of feed, water, or weather—surely this does not yet need to be elaborated, for the generation of lawyers and judges who are also experienced horsemen has not yet vanished—that it would never do to extend or apply the doctrine of warranties of title, if that doctrine be well-founded, to warranties of

soundness to run with so changeable a form of property as a stallion.

From the foregoing it is clear that the fact that the plaintiff was subjected to a liability on his personal, independent warranty to his subvendee is not a controlling circumstance in this action against the defendant on the warranty of the latter to plaintiff. The jury's special findings show that the stallion "Nig" was sound at the time defendant traded it to plaintiff; consequently, defendant's personal warranty to plaintiff was not breached, and hence defendant has incurred no liability. That another jury, in another case, on facts which were presumably the same, came to a different conclusion as to the soundness of the stallion, is one of the mischances which attend the affairs of a work-a-day world where men do not always see alike.

The judgment is reversed, and the cause is remanded with instructions to enter judgment for defendant.

Mason, J. (concurring specially) : I agree that a warranty of quality given by the vendor on a sale of chattels, does not run with the property. That is, a buyer from the vendee cannot recover from the original vendor on such warranty, whether or not he received a similar warranty from his immediate vendor. But that does not seem to me to decide the question in controversy.

A warranty of title to personal property does not run with the property. (24 R. C. L. 159.) That is, a buyer from the vendee cannot successfully sue the original vendor on his warranty, whether or not he received a similar warranty from the person from whom he purchased. But the recognized rule appears to be that if a buyer of personalty under such a warranty is sued by one claiming a superior title, and loses, the vendor is concluded by the judgment, if he was given notice and an opportunity to defend. (23 Cyc. 1272, 1273; 24 A. & E. Encycl. of L. 743; 24 R. C. L. 233; 15 R. C. L. 1019.) The only reason that I find given by courts for not following the same practice with respect to warranties of quality is that a change in that respect might have taken place between the two sales. (*Smith & Melton v. Moore,* 7 S. C. 209, cited in the opinion, and *Morgan v. Winston,* 32 Tenn. 472.) In the present case,

however, it was specifically found that there had been no such. change. It may be that the fact that ordinarily a change of condition would be involved is a sufficient reason for not applying the rule at all in this situation; or the reason may be that in the nature of things it is only in regard to title and related matters that a warranty implies an obligation to defend. I concur in the result, with some doubt, but cannot see that the problem is solved by saying that the warranty does not run with the property.