269 F.2d 501
 B.F. GOODRICH COMPANY, a corporation, Appellant,
v.
Kathleen HAMMOND, Administratrix of the Estates of Adrien
Earl Hammond and Berneice L. Hammond; Kathleen
Hammond and Lloyd L. Hammond, Appellees.
 No. 6062.
 United States Court of Appeals Tenth Circuit.
 July 20, 1959.
 
 Paul C. Sprinkle, Kansas City, Mo. (Edward M. Boddington, Jr. and Boddington, Emerson & Boddington and Sprinkle, Carter, Sprinkle & Larson, Kansas City, Mo., of counsel, were with him on the brief), for appellant.
 Keith Martin, Mission, Kan., for appellees.
 Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.
 PHILLIPS, Circuit Judge.
 
 
 1
 Adrien Earl Hammond and Berneice L. Hammond[1] were killed as the result of an automobile accident which occurred on U.S. Highway 24 about five miles west of Wamego, Kansas on April 15, 1955. Kathleen Hammond is the administratrix of the estate of the decedents and as such administratrix brought this action against the B. F. Goodrich Company,[2] under the Kansas wrongful death statute,[3] to recover damages for the alleged wrongful death of the decedents.
 
 
 2
 The case was tried to the court without a jury. From a judgment in favor of the administratrix, Goodrich has appealed.
 
 
 3
 The evidence, considered in a light most favorable to the administratrix, established these facts:
 
 
 4
 The decedents were the owners of a 1950 Mercury automobile. In August, 1954, Adrien, accompanied by Kathleen, went to the retail store of Goodrich, located at 3744 Broadway, Kansas City, Missouri, and purchased four Goodrich Premium 'Life-Saver' tubeless tires for the automobile. The tires were installed on the wheels of the automobile and were not removed therefrom until after the accident. The salesman who sold the tires represented to Adrien that the tires were blowout proof and that in the event of an injury to a tire, causing a hole through the casing into the air chamber, because of a special construction, a sealing substance would enter the aperture and partially close it and thereby cause the air to escape from the tire slowly, thus avoiding a quick blowout and enabling the driver to keep control of the automobile.
 
 
 5
 Prior to the accident the tires had been driven approximately 3,000 miles. At the time of the accident the decedents were on their way from Smith Center, Kansas, where they had attended a funeral, to their home in Kansas City, Kansas. Immediately prior to the accident, another motorist driving in the same direction as the Hammond automobile and approaching it from the rear with the intent to pass it after he had passed through a no passing zone, noticed that the right side of the Hammond, automobile sank below its normal position, that its rear end began to swerve back and forth on the paved portion of the highway, that its brake lights came on, and that it finally left the highway on the right side of the road and overturned. The automobile made a single skid or tire mark on the pavement for a distance of 106 feet, which mark veered toward the right to the south shoulder of the highway where the automobile left the pavement. The application of brakes will be more effective on a fully inflated tire than on a flat tire. The location of the skid marks for a considerable distance on the pavement was such that both rear tires must have been traveling on the pavement when that portion of the skid marks was made.
 
 
 6
 After overturning, the automobile came to rest in an upright position on its four wheels. The right rear tire was blown out. The other tires were still inflated.
 
 
 7
 The testimony of a qualified expert, who made a careful examination of the tire which blew out, established these facts. The construction of the tires on the Hammond automobile was as follows: An outside rubber tread and an outer rubber portion; beneath that portion rayon cords; beneath the cords a butyl rubber liner; and inside the rubber liner a gummy material which functions as a puncture sealing compound. A small dimple had been worn in the tread prior to the accident, indicating there had been a break in the cord for some time prior to the accident. None of the puncture sealing compound was found in the blowout aperture through which the air escaped and a large portion of the tread had been blown off. Those facts indicated that the blowout was sudden and violent.
 
 
 8
 In the manufacturing process there was inadequate bonding between the liner and the rayon cord. That defect caused the puncture sealing compound to fail to function as intended and caused the sudden blowout. Precautions to prevent inadequate bonding between the liner and the rayon cord can only be taken during the manufacturing process and would be observed under proper inspection procedures.
 
 
 9
 Lloyd L. Hammond, a son of the decedents, took the damaged tire to the Goodrich store where it was purchased and a representative of Goodrich at the store admitted to him that the tire was defective and said it would be replaced without charge.
 
 
 10
 The trial court, inter alia, made the following findings of fact:
 
 
 11
 '4. In August of 1954, Kathleen Hammond went with her father to purchase some tires for a 1950 Mercury automobile, which car was titled in the name of Adrience Earl Hammond and Berneice L. Hammond. They purchased four tubeless tires at the defendant's retail store at 3744 Broadway, Kansas City, Missouri. The salesman at the store told them that the tires were 'blow-out proof', and that, if the tires were damaged, the air would leak out slowly because of a special sealer, and that the car would remain under control.
 
 
 12
 '8. The tire blew out because of a defect which occurred during the manufacturing process. The defect consisted of a poor bonding of the butyl rubber liner to the carcass. Had the bonding been good, the tire would not have blown out, despite the break in the cord, inasmuch as the liner and the broken cord would have mutually supported each other. In such case a slow leak would have developed, and the sealer would have prevented a sudden escape of air.'Since the deaths occurred in Kansas, the rights of action for the wrongful deaths are controlled by the law of Kansas.[4] In determining what warranties, if any, arose at the time of the sale of the tires, we need not determine whether Missouri law or Kansas law is controlling. Under the pertinent facts in the instant case, we think there is no material difference in the law of warranty of these states.
 
 
 13
 The administratrix predicated her claims upon three grounds; breach of express warranty, breach of implied warranty, and negligence in the manufacture of the tires.
 
 
 14
 The trial court predicated his decision on a breach of express warranty. The facts clearly establish an express warranty to Adrien Earl Hammond, which was breached, and was an adequate basis for the judgment for the wrongful death of Adrien.[5] However, there was no evidence that in the purchase of the tire Adrien acted as the agent of Berneice and there was no evidence of any express warranty made to Berneice. Accordingly, since there was no privity between Berneice and Goodrich, we entertain doubt that the judgment for the wrongful death of Berneice can be sustained on the theory of express warranty to her.[6]
 
 
 15
 However, the tires sold to Adrien, as designed and manufactured, were intended to afford protection against sudden blowouts and were purchased by Adrien to be used as tires protected against sudden blowouts. There was, therefore, an implied warranty by Goodrich of the fitness of the tires for the purpose for which they were designed, namely, use as a tire protected against sudden blowouts.[7]
 
 
 16
 An implied warranty is not excluded by an express warranty in a contract of sale, unless it is inconsistent therewith[8] and an express warranty limited to a particular person or class of persons does not exclude an implied warranty to another.[9]
 
 
 17
 The question arises as to whether an implied warranty ran to Berneice, privity between her and Goodrich being absent.
 
 
 18
 Under the law of Kansas an implied warranty is not contractual. It is an obligation raised by the law as an inference from the acts of the parties or the circumstances of the transaction and it is created by operation of law and does not arise from any agreement in fact of the parties.[10] The Kansas decisions are in accord with the general rule laid down in the adjudicated cases.[11] And under the Kansas decisions privity is not essential where an implied warranty is imposed by the law on the basis of public policy.[12]
 
 
 19
 In the case of Nichols v. Nold, 174 Kan. 613, 258 P.2d 317, 38 A.L.R.2d 887, Nold was engaged in the manufacture and sale of various kinds of bottled beverages, including Pepsi-Cola, at his plant in Dodge City, Kansas. The bottles containing such beverages were charged with carbon dioxide or carbonic gas. Pepsi-Cola was sold and delivered by Nold and the defendant, Elsey, to various cafes, restaurants, lunch stands, grocery stores and private homes in Dodge City and surrounding towns and territory. Elsey handled, transported and distributed quantities of Pepsi-Cola acquired by him from Nold throughout such territory, and, among others, to the defendant, Whiteman. Nichols purchased some bottles of Pepsi-Cola from Whiteman and took them to her home. Her daughter, the plaintiff, a girl six years of age, placed two of the bottles of Pepsi-Cola on a quilt covering the front seat of an automobile in which she intended to travel to the home of a neighbor girl to stay all night. As she leaned over the bottles one of them exploded, injuring her left eyeball and her face. The court held that there was an implied warranty that the bottles of Pepsi-Cola which exploded had been manufactured, bottled, handled and sold in such a manner as not to be inherently or imminently dangerous and that the warranty ran to the plaintiff, although there was no privity of contract between her and the defendants.
 
 
 20
 Graham v. Bottenfield's, Inc., 176 Kan. 68, 269 P.2d 413, was an action brought by a user against a distributor of a hair preparation for damages resulting from use of such preparation on the ground that there was a breach of an implied warranty that the preparation was fit for the purpose for which it was sold. In affirming a judgment for the plaintiff below, the court held that there was an implied warranty by the manufacturer, jobber, and distributor of the hair preparation that it was suited and fit for use as a hair preparation and contained no deleterious or harmful substances making it unwholesome or injurious to users and that privity was not essential to recovery by a user upon such implied warranty. It cites the Nichols case with approval.
 
 
 21
 In Worley v. Procter & Gamble Mfg. Co., 241 Mo.App. 1114, 253 S.W.2d 532, 534, Worley, an ultimate consumer, brought an action against Procter & Gamble Mfg. Co., the manufacturer of a detergent, alleging that she incurred a skin infection from the use of such detergent, which was shipped by the manufacturer in cartons bearing representations that the detergent was 'kind to hands.' The Missouri Court of Appeals recognized the general rule that an action for breach of warranty will not lie if the parties are not in privity, but held that exceptions to the rule exist in the case of sales of foods, beverages, drugs and articles likely to produce physical injury if improperly manufactured. The court in part said:
 
 
 22
 'In the case of food products sold in original packages, and other articles dangerous to life, if defective, the manufacturer, who alone is in a position to inspect and control their preparation, should be held as a warrantor, whether he purveys his product by his own hand, or through a network of independent distributing agencies. In either case, the essence of the situation is the same-- the placing of goods in the channels of trade, representations directed to the ultimate consumer, and damaging reliance by the latter on those representations. Such representations, being inducements to the buyers making the purchase, should be regarded as warranties imposed by law, independent of the vendors' contractual intentions. The liability thus imposed springs from representations directed to the ultimate consumer, and not from the breach of any contractual undertaking on the part of the vendor. This is in accord with the original theory of the action. 1 Williston, Sales, sec. 244a; notes and comments 29 B.U.L.R. 107; 36 Col.L.R. 868; 22 Wash.U.L.Q. 406; Jean Blanc, Manufacturer's Liability to other than Immediate Vendee, 24 Va.L.R. 134.
 
 
 23
 'In our opinion, the plaintiff's case does not fail for failure to allege and prove privity between the parties.'
 
 
 24
 The conclusion reached by the Missouri Court of Appeals in Worley v. Procter & Gamble Mfg. Co., supra, finds support in certain earlier decisions of the Missouri Court of Appeals, therein cited and relied upon. See 253 S.W.2d 532 at pages 535 and 536.
 
 
 25
 The Kansas and Missouri decisions referred to above are in accord with the trend of modern authorities.[13]
 
 
 26
 It is true that the Missouri decision is by an intermediate court of appeals. However, where jurisdiction rests solely on diversity of citizenship and there is no controlling decision by the highest court of a state, a decision by an intermediate court should be followed by the Federal court, absent, as here, of convincing evidence that the highest court of the state would decide otherwise.[14]
 
 
 27
 Here, the right rear tire which blew out was defectively manufactured, in that the liner was not adequately bonded to the rayon cord in the area where the blowout occurred. The tire was designed and manufactured to afford protection from sudden or violent blowouts and was intended to be used as a tire protected against such blowouts. Such defect rendered the tire inherently dangerous when used for its intended purpose. Accordingly, we hold that there was an implied warranty of fitness on the part of Goodrich to Berneice; that such warranty was breached, and that under the facts and the findings of the trial court the administratrix was entitled to recover for the wrongful death of the decedent Berneice, because of the breach of the implied warranty to Berneice. Therefore, the judgment of the trial court was correct and it is affirmed.
 
 
 
 [1]
 Hereinafter referred to collectively as the decedents
 
 
 [2]
 Hereinafter called Goodrich
 
 
 [3]
 General Statutes of Kansas 1949, 60-3203
 
 
 [4]
 Stoltz v. Burlington Transportation Co., 10 Cir., 178 F.2d 514, 515, 15 A.L.R.2d 759; 25 C.J.S. Death 28, pp. 1097, 1098
 
 
 [5]
 See Topeka Mill and Elevator Co. v. Triplett, 168 Kan. 428, 213 P.2d 964, 968, 969; Turner v. Central Hardware Co., 353 Mo. 1182, 186 S.W.2d 603, 606, 158 A.L.R. 1402; Belt Seed Co. v. Mitchelhill Seed Co., 236 Mo.App. 142, 153 S.W.2d 106, 109
 
 
 [6]
 Booth v. Scheer, 105 Kan. 643, 185 P. 898, 899, 900, 8 A.L.R. 663; Degouveia v. H. D. Lee Mercantile Co., 231 Mo.App. 447, 100 S.W.2d 336, 337
 
 
 [7]
 Williston on Sales, Rev.Ed., Vol. 1, 235, pp. 604-610; Parkersburg Rig & Reel Co. v. Freed Oil & Gas Co., 111 Kan. 37, 205 P. 1020; Davies v. Motor Radio Co., Mo.App., 236 S.W.2d 409, 412
 
 
 [8]
 Davies v. Motor Radio Co., Mo.App., 236 S.W.2d 409, 413; 77 C.J.S. Sales 316b, p. 1162
 
 
 [9]
 Miller Rubber Co. v. Blewster-Stephen Service Station, 171 Ark. 1179, 287 S.W. 577, 59 A.L.R. 1237
 
 
 [10]
 Nichols v. Nold, 174 Kan. 613, 258 P.2d 317, 324, 38 A.L.R.2d 887; Graham v. Bottenfield's Inc., 176 Kan. 68, 269 P.2d 413, 416
 
 
 [11]
 77 C.J.S. Sales 314, pp. 1155, 1156
 
 
 [12]
 Graham v. Bottenfield's Inc., 176 Kan. 68, 269 P.2d 413, 418; Swengel v. F. & E. Wholesale Grocery Co., 147 Kan. 555, 77 P.2d 930, 932-935
 
 
 [13]
 See cases cited in Worley v. Procter & Gamble Mfg. Co., 241 Mo.App. 1114, 253 S.W.2d 532, 535, 536; Baxter v. Ford Motor Co., 168 Wash. 456, 12 P.2d 409, 411, 412; 88 A.L.R. Note, p. 534; 63 A.L.R. Note, p. 349; 39 A.L.R. Note, p. 1000
 
 
 [14]
 Fidelity Union Trust Co. v. Field, 311 U.S. 169, 177, 178, 61 S.Ct. 176, 84 L.Ed. 109; Six Companies of California v. Joint Highway Dist. No. 13, 311 U.S. 180, 188, 61 S.Ct. 186, 85 L.Ed. 114; West v. American T. & T. Co., 311 U.S. 223, 227, 61 S.Ct. 179, 85 L.Ed. 139; Stoner v. New York Life Insurance Co., 311 U.S. 464, 468, 61 S.Ct. 336, 85 L.Ed. 284