**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GLADYS JONES,

      Plaintiff - Appellant/Cross-
Appellee,

v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

      Defendant - Appellee/Cross-
Appellant.

Nos. 15-1006 and 15-1007
(D.C. No. 1:13-CV-00577-RPM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

In 2008, Karen Barrios, age 13, injured Gladys Jones while negligently driving. After suing Barrios and others, Jones in a separate action sued her own insurer, State Farm, for uninsured-motorist benefits, breach of contract, and bad faith (the original complaint's bad-faith claim was based on State Farm's handling of Jones's claim up to the point when she sued State Farm). Over State Farm's objection, the district court concluded that Jones had timely sued State Farm. Additionally, long after dismissing Jones's original bad-faith claim on the parties'

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

stipulation, the district court authorized Jones to proceed with a separate bad-faith claim (the amended complaint's bad-faith claim was based on State Farm's litigation conduct).

Ultimately, the district court granted summary judgment to State Farm on the newly added bad-faith claim, a ruling that Jones challenges on appeal. By cross-appeal, State Farm contends that the district court erred when it concluded that a Colorado statute of limitations did not bar Jones's claim for uninsured-motorist benefits. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's rulings.

## BACKGROUND

On July 7, 2008, Barrios took a car from her aunt's home and drove to a strip mall in Aurora, Colorado. There, while trying to back out of a parking space, she accidentally drove forward and pinned Jones between the car and the entrance to one of the mall's shops. An ambulance took Jones to a hospital, where she was treated and released a few hours later. The police officers investigating the accident found no proof of insurance in the car and never learned of any insurance covering the car. They impounded the car and cited Barrios for careless driving and failing to provide proof of insurance. Jones later pursued two separate suits: (1) a 2011 state-court personal-injury suit against Barrios and others; and (2) a 2013 suit, originally filed in state court but removed to federal court, against State Farm for uninsured-motorist benefits, breach of contract, and bad faith.

## A.     The State-Court Personal-Injury Suit

2

On July 5, 2011, with just a day to spare on the applicable three-year statute of limitations governing her tort lawsuit, Jones sued Barrios, Barrios's unknown parents or guardians, and two possible owners of the car, Gilberto Garcia and Luis A. Rivera. The traffic-accident report identified Garcia as the car's owner, and Barrios's aunt—who owned the home from which Barrios had taken the car—identified Rivera as the car's owner. Because Jones was unable to serve process on Garcia, the state district court dismissed the claim against him. In that suit, Jones did not sue State Farm for uninsured-motorist benefits.

On December 16, 2011, after the remaining defendants failed to file a responsive pleading, the state district court entered a default judgment against them. On December 20, 2011, State Farm filed an unopposed motion to intervene in the state action. Although Jones had not yet made a claim for uninsured-motorist benefits, State Farm explained its need to intervene on the issue of Jones's damages in case she later made an uninsured-motorist claim against it. On December 22, 2011, the state court granted State Farm's unopposed motion.

On June 25, 2012, the state court held a damages hearing. At that hearing, Rivera was quoted as saying, "I don't own a car, and I don't have any insurance." Appellant's App. vol. 1 at 149. On August 17, 2012, having received evidence of Jones's damages, the state court awarded Jones $49,651.78 in economic damages, $25,000 in "noneconomic damages for her pain and suffering and inconvenience," and "reasonable costs as the prevailing party and interest at the statutory rates, both

3

prejudgment and postjudgment until the date of satisfaction." *Id.* at 44. The court assessed damages against Barrios, her parents or guardians, and Rivera.

**B.**     **Lawsuit Against State Farm for Uninsured-Motorist Benefits, Breach of Contract, and Bad Faith**

On February 11, 2013, unable to recover on her state-court judgment, Jones filed the present lawsuit against State Farm in Denver County District Court. She pleaded three claims: (1) recovery of uninsured-motorist benefits provided in her State Farm policy, (2) breach of contract, and (3) a first-party statutory-bad-faith claim under Colo. Rev. Stat. §§ 10-3-1115(1)(a) and 10-3-1116(1) (2015) based on State Farm's unreasonable "delay, denial, and undervaluation of Plaintiff's claim for uninsured motorist benefits." Appellant's App. vol. 1 at 51. On March 6, 2013, State Farm removed the case to federal district court. Shortly after, the parties filed a stipulated motion to dismiss Jones's first-party statutory-bad-faith claim. Accepting the stipulation, the district court dismissed the claim.

The parties also filed a stipulated motion to strike certain complaint allegations that "could be construed as a bad faith breach of contract claim." *Id.* at 80. The parties stipulated that "Plaintiff intends to pursue only a breach of contract claim for uninsured motorist benefits and stipulates and agrees to strike all allegations in paragraph 26 of Plaintiff's Complaint." *Id.* Part of Jones's breach-of-contract claim, paragraph 26 read as follows: "At all times relevant to this action, Defendant owed to Plaintiff the implied duty of good faith and fair dealing in the insurance contract." *Id.*

4

at 61. On April 3, 2013, the district court struck all allegations in paragraph 26 from the complaint.

On May 13, 2013, State Farm filed its first summary-judgment motion, asserting that Jones's claim was untimely because Jones had not filed her uninsured-motorist claim within three years of the July 7, 2008 accident. In support, State Farm noted that "Plaintiff, through her attorneys, sent a letter to State Farm as early as August 1, 2008, reflecting the knowledge that Ms. Barrios was under age and uninsured." *Id.* at 83. In response, Jones acknowledged that she had known that the 13-year-old Barrios would not have had her own insurance policy, but Jones contended that the car's owner might well have had insurance that would cover Barrios's driving and Jones's injuries. Jones explained that "[b]oth Plaintiff and Defendant investigated all persons involved with the vehicle driven by the underage driver for potential coverage and kept running into roadblocks." *Id.* at 92. Thus, she asserted that the state-court personal-injury suit was "[t]he only way to fully determine if there was or was not coverage" of the car. *Id.* at 93. She argued that until Rivera testified at the default-damages hearing, she could not have known that he had not owned or insured the car. Accordingly, Jones argued that the statute of limitations had not begun to run until Rivera's testimony at the June 25, 2012 default-damages hearing. Because she filed her claim against State Farm within two years of Rivera's testifying, Jones argued that her suit against State Farm was timely.

On August 21, 2013, after hearing argument, the district court denied State Farm's summary-judgment motion based on Colorado's statute of limitations for

5

uninsured-motorist claims. The court explained that "it isn't a question of whether the driver herself had insurance, but was there insurance on the vehicle." *Id.* at 149. The court noted that when State Farm investigated the car's registration in January 2009, six months after the accident, State Farm found that the registration had expired, "[s]o they don't know who owns the car . . . [a]nd neither does the plaintiff." *Id.* at 151. The court then set a scheduling conference for September 6, 2013, to determine the scope of discovery.

At the September 6, 2013 scheduling conference, State Farm's counsel told the court that State Farm would seek discovery related to when Jones knew that the car was uninsured—or, in other words, when her uninsured-motorist claim had accrued under the statute of limitations. Jones's attorney countered that the court had already decided the statute-of-limitations issue in its denial of State Farm's first summary-judgment motion. The court then asked what State Farm expected to find in discovery. State Farm said that it wanted to "[t]ake the depositions of [Jones's] former attorneys . . . [t]o establish that they knew that the statute of limitations was going to run," because the attorneys' knowledge could then be "imputed to [Jones] whether she knew it or not, as a matter of law." *Id.* at 119.

Obviously frustrated with State Farm's approach, the district court—without a request by Jones—invited Jones to amend her complaint and expand her claims for relief:

> I'll let [Jones] amend the complaint for bad faith. I don't understand State Farm's position in this case. I really don't. I mean, as I said at the hearing on the motion for summary judgment, nobody knew who owned

6

this vehicle and who might have insurance. And until that's established—which even today we don't know. So I think [State Farm is] in bad faith. I don't understand what [State Farm is] doing in this case.

*Id.* In response, State Farm complained that the court already had dismissed Jones's first-party bad-faith claim based on the parties' stipulated motions. In support of the court's position, Jones distinguished the previously dismissed bad-faith claim, which she pleaded in her original complaint, from the one the court now invited. Jones noted that she had based her previously dismissed bad-faith claim on State Farm's conduct from the accident date until she filed the uninsured-motorist suit against State Farm. In contrast, Jones noted that she would base her new bad-faith claim on State Farm's conduct starting from the date that she filed her uninsured-motorist complaint against State Farm—i.e., a bad-faith claim based on State Farm's ongoing duty to Jones as its insured. The district court told State Farm that the new bad-faith claim would be based on its "litigation conduct." *Id.* at 120. The district court said that State Farm had misdirected its summary-judgment motion toward whether Barrios was insured, which had nothing "to do with whether the automobile was insured or even who owned it." *Id.* at 121.

After the conference, Jones moved to amend her complaint to add two bad-faith claims: (1) a first-party statutory-bad-faith claim based on State Farm's alleged violation of Colo. Rev. Stat. §§ 10-3-1115(1)(a) and 10-3-1116(1); and (2) a common-law bad-faith claim for breach of the insurance contract. Jones's amended complaint premised the first-party statutory-bad-faith claim on State Farm's

7

"unreasonable" "delay, denial, and undervaluation of Plaintiff's claim for uninsured motorist benefits." Appellant's App. vol. 1 at 131. Jones's amended complaint also identified the following bases for her common-law bad-faith claim:

a. Failing to give equal consideration to the interests of Plaintiff, its insured;
b. When investigating Plaintiff[']s claims, failing to diligently search for evidence that supported [its] insured's (Plaintiff's) claims;
c. Seeking to discover only evidence that defeated [its] insured's (Plaintiff's) claims;
d. Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits, with knowledge or reckless disregard or a lack of reasonable basis for delaying and/or withholding benefits;
e. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;
f. Refusing to pay claims without conducting a reasonable investigation based upon all available information;
g. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims after its liability has become reasonably clear;
h. Compelling Plaintiff to institute litigation to recover amounts due under the insurance policy by offering substantially less than the amounts Plaintiff is entitled to recover;
i. Forcing Plaintiff into the costly and lengthy process of litigation;
j. Any further acts which may be discovered.

*Id.* at 132–33. On September 27, 2013, the district court granted Jones's motion to amend and accepted her amended complaint for filing.

On April 25, 2014, the district court held another pretrial conference. At the conference, the parties agreed that a trial was unnecessary and authorized the court to decide the case on summary judgment with the deposition testimony. The court then suggested that State Farm file a second motion for summary judgment concerning whether Jones had filed her claim for uninsured-motorist benefits within the applicable statute of limitations.

8

On May 27, 2014, State Farm filed its second motion for summary judgment, again arguing that the statute of limitations barred Jones's uninsured-motorist claim. In this motion, State Farm contended that "[a]ll the facts in this case demonstrate Plaintiff knew there was no insurance coverage for the driver as early as August 1, 2008, when Plaintiff retained her first lawyer," and, therefore, "Plaintiff did not timely file suit . . . within the [three-year] statute of limitations applicable to her claim." Appellant's App. vol. 2 at 172–73. Jones responded that the statute of limitations began to run only when she learned from Rivera's testimony that there was no insurance on the car. Jones conceded that she knew that "Barrios was an uninsured driver," but argued that State Farm had "fail[ed] to address the liability and status of the remaining tortfeasors when addressing the timeliness of Plaintiff's claims against State Farm." *Id.* at 214. Jones argued that the status of insurance coverage for the other tortfeasors—specifically, Barrios's parents and the car's owner—was unknown and contested until the conclusion of her state-court personal-injury suit.

In addition, Jones moved for summary judgment on all of her claims. *Id.* at 198 (moving for "an *Order* entering summary judgment in favor of Plaintiff and against Defendant on Plaintiff's claims pursuant to her Uninsured Motorist Coverage; Breach of Contract; Violation of C.R.S. § 10-3-1115(a)(A) and 1116(1); and Bad Faith Breach of Insurance Contract pursuant to Fed. R. Civ. P. 56 . . . .").

In an order without a hearing, the district court denied State Farm's second motion for summary judgment. The court acknowledged that any dispute about the

timeliness of Jones's claims "could have been avoided if the plaintiff had named State Farm as a defendant in the tort action." *Id.* at 270. It is unclear whether the district court adopted Jones's argument that the statute of limitations began to run when Rivera denied ownership at the June 25, 2012 default-damages hearing or instead concluded that the statute of limitations commenced at another time. Regardless, the court reviewed Jones's argument and then denied State Farm's motion for summary judgment. The court concluded that "[i]t would be unjust to now grant summary judgment of dismissal when it cannot be said with certainty that there was no liability insurance." *Id.* Apparently having second thoughts about inviting additional bad-faith claims from Jones, the district court summarily dismissed those newly added bad-faith claims, saying, "The defendant has made an arguable defense to the plaintiff's claim. Accordingly, the claims for bad faith and unreasonable delay are dismissed." *Id.* at 271.

In sum, the district court denied State Farm's second motion for summary judgment based on the statute-of-limitations defense, dismissed Jones's bad-faith claims in her amended complaint, and ordered "that the parties shall attempt to stipulate to the amount of a judgment to be entered for" Jones. *Id.* Despite the court's direction, the parties each filed their position regarding damages and notified the court that they were "unable to reach an amicable agreement as [to] the amount of a judgment." *Id.* at 275. After considering the parties' arguments, the court awarded Jones her full uninsured-motorist-policy limit, "$100,000.00, plus post-judgment interest at the rate of 0.15 percent per annum and costs upon the filing of a bill of

costs." *Id.* at 282. Both parties appealed. State Farm has appealed the district court's denial of summary judgment, and Jones has appealed the dismissal of her amended bad-faith claims.

## DISCUSSION

On appeal, Jones raises three issues: (1) whether the district court erred in dismissing her bad-faith claims as pleaded in her amended complaint; (2) whether the court erred in disallowing testimony from Jones's expert witness on when "a reasonable insured should not be expected to know that an at-fault driver did not have insurance coverage"; and (3) whether the court erred in failing to grant Jones interest on the judgment from the date that the insurance benefits should have been paid, rather than just from the date of the district court's judgment. Appellant's Opening Br. at 2. By cross-appeal, State Farm raises three other issues: (1) whether the district court erred in concluding that the Colorado statute of limitations did not bar Jones's claim for uninsured-motorist benefits; (2) whether the court erred in allowing Jones to amend her complaint to include claims for statutory and common-law bad faith; and (3) whether the court erred in denying State Farm its Seventh Amendment right to a jury trial.

We conclude that the district court did not err in dismissing Jones's bad-faith claims. Because Jones did not argue in the district court that State Farm had wrongfully withheld prejudgment interest by limiting its total payout to the policy limits (despite arguing on appeal that State Farm did so in violation of Colo. Rev. Stat. § 5-12-102), we treat her appellate claim to that effect as waived. Additionally,

11

we agree with the district court that the Colorado statute of limitations did not bar Jones's claim for uninsured-motorist benefits. In view of these two rulings, the parties' remaining issues are moot.

## A.  Whether the Colorado Statute of Limitations Barred Jones's Claims Against State Farm for Uninsured-Motorist Benefits

We begin with a threshold question: Does Colorado law bar as untimely Jones's claim for uninsured-motorist benefits against State Farm? It does not.

We review de novo the questions of whether a court applied the proper statute of limitations and when the applicable statute of limitations began to run. *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005). The Colorado legislature has provided limitations periods in which insureds must file uninsured-motorist claims:

> An action or arbitration of an "uninsured motorist" insurance claim, as defined in sections 10-4-609 and 10-4-610, C.R.S., shall be commenced or demanded by arbitration demand within three years after the cause of action accrues; except that, if the underlying bodily injury liability claim against the uninsured motorist is preserved by commencing an action against the uninsured motorist within the time limit specified in sections 13-80-101(1)(n) and 13-80-102(1)(d), then an action or arbitration of an uninsured motorist claim shall be timely if such action is commenced or such arbitration is demanded within two years after the insured knows that the particular tortfeasor is not covered by any applicable insurance. In no event shall the insured have less than three years after the cause of action accrues within which to commence such action or demand arbitration.

Colo. Rev. Stat. § 13-80-107.5(1)(a). Under this statute, an insured is guaranteed a minimum of three years from the date of an accident to file an uninsured-motorist claim. *Id.* And if the insured sues the tortfeasor within the three-year limitations

12

period for the tort suit, the insured may—in one circumstance—extend the three-year limitations period to sue the insurer for uninsured-motorist benefits. *Id.* That circumstance is when the insured does not "know" that the tortfeasor was uninsured until more than a year after the accident. *Id.*; *see Pham v. State Farm Auto. Ins. Co.*, 296 P.3d 1038, 1043 (Colo. 2013) (explaining that, in an underinsured-motorist case, "the language of the statute itself clearly and unambiguously conditions the two-year limitations period applicable to uninsured motorist claims on the insured's awareness of the tortfeasor's lack of any applicable liability insurance whatsoever" (emphasis omitted)).

The Colorado Court of Appeals has illustrated how this statute of limitations runs by providing three possible scenarios:

*Scenario A . . . :*

Car accident occurs and claim accrues January 31, 2004

By February 4, 2004, plaintiff learns driver is uninsured

Plaintiff files suit against both driver and insurer on January 4, 2007

Suit against insurer is timely because it was brought within three years after cause of action accrued. Grace period to sue insurer is not relevant.

*Scenario B:*

Car accident occurs and claim accrues August 2, 1997

Plaintiff files suit against driver August 2, 1999 (within limitations period, which would expire August 2, 2000 under section 13-80-101(1)(n))

Plaintiff learns driver is uninsured September 2, 1999

Plaintiff files suit against insurer August 2, 2001

13

Suit against insurer is timely because, under second clause of section 13-80-107.5(1)(a), plaintiff properly preserved claim against driver, and grace period extends limitations period to two years after plaintiff learned driver was uninsured.

*Scenario C . . . :*

Car accident occurs and claim accrues on August 2, 1997

Plaintiff learns uninsured status July 13, 1998

Plaintiff sues driver July 26, 2000

Plaintiff sues insurer April 9, 2001

Plaintiff has no less than three years after claim accrual to sue insurer (i.e., by August 2, 2000). Grace period of second clause of section 13-80-107.5(1)(a) does not apply, because it would expire on July 13, 2000, which is [before the] three-year limitations cut-off (August 2, 2000). Grace period cannot be used to shorten time to sue insurer, and thus it does not alter three-year limitations period.

Suit against insurer is untimely because it was filed outside three-year limitations period, and under these facts, grace period would not extend that limitations period.

*Rider v. State Farm Mut. Auto. Ins. Co.*, 205 P.3d 519, 523 (Colo. App. 2009).

The question here is which scenario fits Jones. How we answer that question depends on what it means for the insured to *know* that the tortfeasor is uninsured. Although the Colorado Supreme Court has not yet decided what "knows" means in this statute, the Colorado Court of Appeals has given some helpful direction.[1]

---

[1] Where, as here, "jurisdiction rests solely on diversity of citizenship and there is no controlling decision by the highest court of a state, a decision by an intermediate court should be followed by the Federal court, absent convincing evidence that the highest court of the state would decide otherwise." *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1132 (10th Cir. 2002) (alteration omitted)

The Colorado Court of Appeals has rejected the argument that a plaintiff "know[s]" that the tortfeasor lacks insurance coverage only upon obtaining "documented proof that no applicable policy insured the other driver." *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 900 (Colo. App. 2003). Instead, the court imposes a duty on plaintiffs to "use due diligence in discovering the relevant circumstance or event" surrounding an underlying accident. *Id.* In other words, Colorado courts do "not reward denial or self-induced ignorance" about applicable insurance. *Id.* For this reason, "the limitation[s] period in which to bring a claim against [an uninsured-motorist-insurance] carrier under § 13-80-107.5(1)(a) commences to run when the insured knew or, in the exercise of reasonable diligence, should have known that there was no applicable insurance." *Id.* Citing Black's Law Dictionary, the Colorado Court of Appeals has interpreted "knowledge" to mean "an awareness or an understanding." *Id.* (quoting *Knowledge*, *Black's Law Dictionary* (7th ed. 1999)). The most recent edition of Black's Law Dictionary further defines "knowledge" as "a state of mind in which a person has no substantial doubt about the existence of a fact." *Knowledge*, *Black's Law Dictionary* (10th ed. 2014).

Thus, under Scenario A, set forth in *Rider*, a Colorado court would refuse to extend the three-year statute of limitations for uninsured-motorist claims when a plaintiff "knew or, in the exercise of reasonable diligence, should have known that there was no applicable insurance" within a year of an accident. *Sulca*, 77 P.3d at

---

(quoting *B.F. Goodrich Co. v. Hammond*, 269 F.2d 501, 505 (10th Cir. 1959)). Thus, we turn to the Colorado Court of Appeals' jurisprudence for guidance.

15

900; *see Rider*, 205 P.3d at 523. Under Scenario B, a Colorado court could extend the three-year statute of limitations up to two years from the date the plaintiff-insured first knows that no insurance covered the tortfeasor if the plaintiff-insured has sued the other driver within the three-year statute of limitations under Colo. Rev. Stat. §§ 13-80-101(1)(n) and 13-80-102(1)(d). *Rider*, 205 P.3d at 523; *see Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101–02 (Colo. App. 2005). And, under Scenario C, that two-year extension would not extend the insured's three years to bring an uninsured-motorist suit against the insurer, because the two-year extension would expire within the original three-year limitations period. *Rider*, 205 P.3d at 523; *see Trigg*, 129 P.3d at 1102 (noting that the "three-year statute of limitations and the two-year statute of limitations run concurrently").

State Farm argues that "shortly after the accident" Jones knew, or should have known with the exercise of reasonable diligence, that neither Barrios nor the car's owner had insurance covering Jones's injuries. Appellee's Principal Br. at 29 n.15. To support its position that section 13-80-107.5(1)(a) bars Jones's uninsured-motorist claim, State Farm relies on two Colorado Court of Appeals cases: *Trigg* and *Sulca*.

In *Trigg*, the Colorado Court of Appeals concluded that "[t]he insured's claim against the insurer accrued as early as August 2, 1997 [the date of the accident], when the driver admitted he was uninsured, and no later than July 13, 1998, when the insured indicated to his doctor that he was involved in uninsured motorist litigation." 129 P.3d at 1102. *Trigg* is Scenario C. Two years from that date of knowledge (July 13, 2000) would come before the otherwise applicable three-year statute of

16

limitations ran on August 2, 2000.[2] *Trigg* differs from Jones's case in that in *Trigg*, immediately after the accident, a police officer and the other driver's mother told the insured or his wife that the other driver was uninsured, no facts indicated otherwise, and Trigg admitted to his doctor that he had known within a year of the accident that the other driver was uninsured. *See id.* at 1100.

In *Sulca*, another uninsured-motorist case, a driver caused an automobile accident and, before leaving the accident scene, told the "insured that he did not have automobile insurance and he did not own the car he was driving." *Sulca*, 77 P.3d at 898. The insured argued that "until he had documented proof that no applicable policy insured the other driver," "he did not 'know' that the tortfeasor was uninsured." *Id.* at 900. In *Sulca*, nothing indicated that the insured had any leads to learn other potential owners of the car.

Here, in contrast, Jones had two leads about potential owners and pursued Rivera all the way through the default-damages hearing before learning that he did not own the car. Because Jones did not know that no insurance was available from Rivera to cover her injuries until the default-judgment hearing, her case is similar to Scenario B—she filed her tort claim against Barrios within three years of the accident, she learned later (at the default-damages hearing) that the car was

---

[2] Elsewhere in its opinion, the court stated that the limitations period had run "as early as" the day of the accident because on that day—August 2, 1997—a police officer had told the insured that the other driver was ticketed for "failing to have proof of insurance," and, the opinion further noted that, the next day, "the insured's wife talked with the driver's mother and was told that the driver did not have insurance at the time of the accident." *Trigg*, 129 P.3d at 1100, 1102.

17

uninsured, and she sued State Farm within two years of learning that the vehicle was uninsured.

We agree with the district court's observation that "[t]he circumstances of this case are unique. To this day, the parties do not know who owned the automobile and whether there was any insurance." Appellant's App. vol. 2 at 270. State Farm claims to have used reasonable diligence in investigating whether its uninsured-motorist coverage applied, yet we note that it too was unable to identify the car's owner or whether the car was insured. State Farm's efforts show us that however diligently Jones searched for an insured owner of the car, she would not have found one.

We must also note that Garcia—the other potential owner—is still unaccounted for. But Jones concedes that she knew, when Rivera testified at the state-court evidentiary hearing on June 25, 2012, that Rivera did not own the car and had not insured it. Because Jones filed her uninsured-motorist claim against State Farm well within two years (in fact, in about eight months) after learning that no one had insured the car Barrios had driven, the statute of limitations does not bar her claim.

**B.    Whether the District Court Erred in Granting Summary Judgment in Favor of State Farm**

Next, we address the bad-faith claims against State Farm that Jones added in her amended complaint. We conclude that the district court did not err in dismissing Jones's bad-faith claims. Accordingly, State Farm's challenge to Jones's ability to amend her complaint to add the bad-faith claims is moot.

18

Jones argues that the district court erred in dismissing the first-party statutory-bad-faith claims in her amended complaint. She offers two rationales in support: (1) the court failed to give Jones notice and an opportunity to respond and (2) the court disregarded factual disputes about whether State Farm's delay or denial of benefits was reasonable under the circumstances. We reject each of these arguments.

Jones argues that "the district court did not give notice that it may grant summary judgment to State Farm on Jones'[s] bad faith claims." Appellant's Opening Br. at 18. State Farm, in turn, points out that Jones asked the court to grant her summary judgment on her amended complaint's first-party-statutory-bad-faith claims made in her response to State Farm's second motion for summary judgment (even though State Farm had not raised the issue in its motion).

Federal Rule of Civil Procedure 56(f) states that, "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; . . . or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

> While we do not encourage the practice of granting summary judgment sua sponte, we will not reverse absent evidence of prejudice. So long as "the losing party was on notice that [it] had to come forward with all of [its] evidence, a sua sponte grant of summary judgment may be appropriate."

*First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166, 1170 (10th Cir. 2005) (alteration in original) (quoting *Ward v. Utah*, 398 F.3d 1239, 1245–46 (10th Cir. 2005)). The emphasis on "notice" and an "opportunity to respond" ensures that a party can present evidence showing a genuine issue of

19

material fact to defeat summary judgment. *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1214 (10th Cir. 2010) (citations omitted); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998).

In reviewing compliance with Rule 56(f), we must recognize the difference between situations in which a district court grants summary judgment sua sponte versus when it grants summary judgment in favor of a nonmoving party that did not file a cross-motion. "When there has been a motion but no cross-motion, the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given the opportunity to present evidence designed either to support or refute the request for entry of summary judgment." 10A Wright, Miller & Kane, *supra*, § 2720; *see id.* ("The weight of authority, however, is that summary judgment may be rendered in favor of the opposing party even though the opponent has made no formal cross-motion under Rule 56."); 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.71[3] (3d ed. 1999). As the Seventh Circuit put it in *Goldstein v. Fidelity Insurance Underwriters, Inc.*, 86 F.3d 749 (7th Cir. 1996), "[b]oth parties . . . were on notice that summary judgment was being considered." *Id.* at 750. Simply because the district court agreed that the moving party "was right about the facts but wrong on his assertion that he was entitled to judgment as a matter of law" is insufficient to conclude that summary judgment was procedurally improper. *Id.* at 751.

Moreover, "even if such notice is lacking, we will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice."

20

*Johnson*, 594 F.3d at 1214. We have said that the risk of prejudice is lowered when the district court's dismissal is

> based on issues identical to those raised by a moving party . . . because "the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of judgment."

*Kannady v. City of Kiowa*, 590 F.3d 1161, 1171 (10th Cir. 2010) (quoting 10A Wright, Miller & Kane, *supra*, § 2720).

Here, Jones bears the burden of proof on her bad-faith claims. Jones knew that the district court was considering evidence in support of her bad-faith claims because she asked the court to grant summary judgment in her favor on those claims. After presenting evidence she believed supported her claims, Jones argued to the district court that no genuine issue of material fact existed to deprive her of summary judgment on these claims. Jones took advantage of her opportunity to present evidence supporting her claims, attaching State Farm's insurance file to her summary-judgment motion. The district court agreed with Jones that no dispute of material fact existed but concluded that the facts Jones proffered could not support her bad-faith allegations. This confirms that Jones knew that the district court was considering summary judgment and that the district court provided Jones ample opportunity to present evidence supporting her claims.

Jones also fails to identify any prejudice resulting from the purported lack of notice. Jones offers no new facts on appeal that were not already before the district court when it considered her motion for summary judgment. Additionally, Jones does

not describe any other evidence that she would have provided if she had known that the district court was considering granting summary judgment in State Farm's favor. Thus, Jones suffered no prejudice from the purported lack of notice, and the district court had the authority to consider whether State Farm was entitled to summary judgment. *See Johnson*, 594 F.3d at 1214 (affirming the district court's grant of summary judgment where the plaintiff "relie[d] on exactly the same evidence and arguments she made before the district court, and identifie[d] no way in which she was prejudiced by the district court's chosen procedural course").

Having established that summary judgment was fairly in play before the district court, we next consider whether the district court properly granted summary judgment. *Id*. Summary judgment is appropriate if there is no genuine dispute of material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the district court's decision to grant summary judgment de novo. *First Am. Kickapoo Operations L.L.C.*, 412 F.3d at 1170.

Although Jones now argues that summary judgment is improper because a dispute of material fact existed, Jones argued to the district court that no dispute of material fact existed on these claims. Instead, both parties agreed to vacate trial and have the court decide the issues on summary judgment. Because Jones agreed to this approach, we will not allow Jones to now reverse course and argue that a dispute of material fact exists on these claims. Accordingly, the district court did not err in dismissing Jones's bad-faith claims on summary judgment.

**C.    Whether the District Court Erred in Denying Jones Prejudgment Interest**

Jones also argues that the district court erred in calculating her recoverable-interest award. She asks us to reverse the district court's order because it "erred when it failed to include prejudgment interest and by calculating only post judgment interest due to Jones from the date of its Final Judgment." Appellant's Opening Br. at 34. Jones frames her argument about prejudgment interest under Colo. Rev. Stat. § 5-12-102(1)(a), which governs contract disputes. Jones contends that under section 5-12-102, she is entitled to an "award of interest from the time [she was] wronged." Appellant's Opening Br. at 34.

This issue is primarily controlled by two Colorado prejudgment-interest statutes and one Colorado Supreme Court case, *USAA v. Parker*, 200 P.3d 350 (Colo. 2009), interpreting them. *See* Colo. Rev. Stat. §§ 13-21-101, 5-12-102. Section 13-21-101 governs damages arising from personal injuries. *Parker*, 200 P.3d at 354. Section 5-12-102 applies to damages for wrongful withholding of money or property. *Parker*, 200 P.3d at 359. On appeal, Jones seeks prejudgment interest in excess of the policy limits under section 5-12-102.

We hold that Jones waived this argument because she argued the opposite position before the district court and raises this issue for the first time on appeal. At the district court, Jones argued that section 13-21-101 governed her claim for personal injuries and specifically argued that section 5-12-102(1)(A) was inapplicable. There, she also argued that her "uninsured motorist claim was for damages resulting from the tort of another person, even though it also involved the

23

contract with her insurer; therefore, she was entitled to the higher interest rate set in [Colo. Rev. Stat. § 13-21-101] rather than that for contractual claims under [Colo. Rev. Stat.] § 5-12-102." Appellant's App. Vol. 2 at 277.

> [W]e will not consider arguments raised for the first time on appeal. [Appellant] may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory, even if the new theory falls under the same general category as an argument presented at trial.

*Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) (quotation marks and citation omitted). Jones never argued that she was entitled to prejudgment interest under section 5-12-102 before this appeal. And she has not identified any extraordinary circumstances justifying a departure from our rule. Because Jones did not argue in the district court that State Farm had wrongfully withheld prejudgment interest beyond the policy limits in violation of section 5-12-102, we treat her appellate claim to that effect as waived.[3]

## D.     The Parties' Remaining Claims are Moot

State Farm claims that the district court erred when the court concluded that State Farm waived its right to a jury trial. Additionally, Jones claims that the district court erred when it excluded expert testimony from Jones's retained expert, attorney Chad Hemmat. Having already concluded that the applicable statute of limitations did not bar Jones's claims against State Farm, and having affirmed the district court's

---

[3] Because Jones did not raise this issue before the district court, we do not reach the issue whether Jones could have received prejudgment interest in excess of the policy limits under Colo. Rev. Stat. § 5-12-102.

dismissal of Jones's bad-faith claims, we conclude that the parties' remaining issues are moot.

## CONCLUSION

In Jones's appeal, No. 15-1006, we affirm the district court's order granting summary judgment in favor of State Farm. In State Farm's appeal, No. 15-1007, we affirm the district court's order granting summary judgment in favor of Jones. We hold that Jones's second issue (striking of Jones's expert), and State Farm's second and third issues (motion to amend complaint and jury-trial waiver) are moot.

Entered for the Court


Gregory A. Phillips
Circuit Judge